2023 IL App (1st) 220148

FOURTH DIVISION
Order filed: February 2, 2023

No. 1-22-0148

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of |
| Plaintiff-Appellee, | ) ) | Cook County. |
| v. | ) ) | No. 86 CR 10404 |
| MICHAEL McCOY, | ) ) ) | Honorable Michael Clancy, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE HOFFMAN delivered the judgment of the court, with opinion. Justices Rochford and Martin concurred in the judgment and opinion.

**OPINION**

¶ 1 Appellant Michael McCoy ("the defendant") appeals the circuit court's second-stage dismissal of his successive petition for postconviction relief filed under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq*. (West 2018)). In the petition, the defendant raised four grounds for relief, including a claim of actual innocence based on newly discovered evidence in the form

of a codefendant's affidavit averring that the defendant was not involved in the crime that led to his convictions. Because the circuit erred in conducting its analysis of that issue, we reverse the court's order and remand for the defendant's petition to be advanced to third-stage proceedings.

¶ 2 The events that led to the defendant's convictions occurred over the course of the late evening of April 9 and early morning of April 10, 1986. Around 11:00 p.m. on April 9, several men entered a neighborhood liquor and grocery store in south Chicago, purchased some liquor, began drinking in the back of the store, and harassed some customers. The store employees recognized one of the men as Wayne Millighan, who had briefly worked at the store a week earlier.

¶ 3 A couple of hours later, around 1:00 a.m. on April 10, a witness observed Millighan arguing in the street with another man approximately a hundred feet from the liquor store. Millighan shot the man with whom he was arguing and then walked to the liquor store with two other men. Millighan and the two accomplices then entered the store and proceeded to conduct an armed robbery. During the course of the robbery, Millighan and another man entered the secured section of the store, with Millighan going to the cash register and the other man going to a back office. The assailant who entered the back office shot one of the store's four employees in the head, killing him.

¶ 4 Immediately after the robbery, the three surviving employees, speaking through their best English-speaker, collectively gave police a description of the shooter as a black male, 5'9" tall, and approximately 28 years old. They also reported that the suspect was wearing a black jacket, blue jeans, and gym shoes and had an earring in his left ear. The following day, the defendant, who matched the physical description provided by the witnesses, was arrested while sitting in his car in front of his apartment building, which was across the street from the victimized store. The defendant was wearing a gold earring in his left ear. Subsequently, two of the store employees

identified the defendant as the shooter in a photo array, and all three employees identified the defendant in a lineup as having been the shooter.

¶ 5 Following a jury trial in 1989, the defendant was convicted of armed robbery and firstdegree murder, and he was sentenced to life in prison. There was no physical evidence presented at trial linking the defendant to the crime. The primary evidence consisted of the store employees' identifications, as well as testimony from a police officer that a swab of a substance found on the defendant's shoe tested presumptively positive for the presence of blood. However, there was not enough of a sample to conduct any further lab testing on that substance. Testimony also showed that the assailant who kicked in the door to the secured area of the store left a shoe print on the door that did not match the tread of defendant's shoes. This court ultimately affirmed the defendant's convictions and sentence. See *People v. McCoy*, 238 Ill. App. 3d 240 (1992).

¶ 6 In the three decades since, the defendant has pursued numerous state and federal postconviction remedies, including three petitions for postconviction relief, one in 1997 and two in 2000. All three petitions were dismissed, and we affirmed all three dismissals on appeal. See *People v. McCoy*, 355 Ill. App. 3d 1185 (2005) (table) (unpublished order under Supreme Court Rule 23); *People v. McCoy*, 326 Ill. App. 3d 1156 (2001) (table) (unpublished order under Supreme Court Rule 23); *People v. McCoy*, 294 Ill. App. 3d 1100 (1998) (table) (unpublished order under Supreme Court Rule 23). In 2015, he was granted leave to file the instant successive petition for postconviction relief, which he eventually filed in 2019, raising four claims for relief: (1) actual innocence, supported by an affidavit from Millighan averring that another man, Howard Reed, was the shooter in the robbery and that the defendant was not involved in the crime; (2) a *Brady*[1]

---

[1] *Brady v. Maryland*, 373 U.S. 83 (1963).

violation related to the State's alleged failure to disclose exculpatory serology evidence; (3) ineffective assistance of trial and appellate counsel for their failures to uncover the evidence at issue in claims one and two; and (4) cumulative error. On the State's motion to dismiss, the circuit court conducted a second-stage review of the petition and found that the defendant had not shown that any of his four claims should be advanced to the third stage. Accordingly, the court dismissed the petition. This appeal follows.

¶ 7 In this appeal, the defendant contests only the court's ruling on his actual-innocence claim, and he expressly abandons the remaining three. Because the court dismissed the defendant's petition at the second of the Act's three stages, our review is focused on "whether the allegations in the petition, liberally construed in favor of the petitioner and taken as true, are sufficient to invoke relief under the Act." *People v. Sanders*, 2016 IL 118123, ¶ 31. For a claim asserting actual innocence, the defendant must make a "substantial showing" (*Id.* ¶ 37) that the evidence supporting his claim is "newly discovered, material and not merely cumulative, and of such conclusive character that it would probably change the result on retrial" (*Id.* ¶ 46 (citing *People v. Ortiz*, 235 Ill. 2d 319, 333 (2009))). We review the second-stage dismissal of a petition *de novo*. *Id.* ¶ 31.

¶ 8 The defendant's actual-innocence claim is premised on an affidavit from his codefendant Wayne Millighan. In the affidavit, Millighan avers that, although the defendant was drinking in the liquor store with Millighan earlier in the evening on April 9, the defendant was not involved in the robbery at the liquor store in early morning of April 10 and that the shooter was actually a man named Howard Reed. Millighan states that his recent conversion to Christianity compelled him to come forward with the truth.

¶ 9 The defendant asserts that this evidence is newly discovered because Millighan would not have been willing to incriminate himself previously and is non-cumulative because there was no other evidence presented at trial that established these facts. The defendant also alleges that the evidence is material and conclusive because it tends to show his innocence and because the State's evidence implicating him in the offense was not particularly strong. Further, the defendant argues that the liquor store employees' identifications were unreliable and tainted by their familiarity with the defendant's face from the time he spent in the store earlier in the evening, an argument that he claims would be supported at a potential new trial by expert testimony concerning witness identifications. Ultimately, the defendant claims that Millighan's testimony would be of sufficient character to undermine the witness identifications, which were the primary evidence of guilt. However, the circuit court found that the allegations in Millighan's affidavit are "positively rebutted by the sworn testimony of Wayne Millighan at his own trial," in which Millighan claimed to have not been involved in the robbery. As we explain below, and as the State concedes, the court erred in reaching this conclusion because a postconviction court cannot look to the record of another proceeding to discredit evidence supporting a claim of actual innocence and because the record in the defendant's case does not positively rebut Millighan's allegations.

¶ 10 In a second-stage proceeding "[w]ell-pleaded factual allegations of a postconviction petition and its supporting evidence must be taken as true unless they are positively rebutted by the record of the original trial proceedings." *Sanders*, 2016 IL 118123, ¶ 48. And, indeed, in some cases courts have refused to credit newly discovered evidence that is directly and conclusively contradicted by other evidence in the original trial record. For example, in *Sanders*, a codefendant's recantation was positively rebutted by the trial record and was, therefore, not conclusive, when the recanting

codefendant claimed that the victim had only been shot once, but the medical examiner had testified at trial that the victim had in fact been shot twice. *Id.*

¶ 11 Although it is, therefore, permissible to discredit newly discovered evidence that is positively rebutted by the trial record, the circuit court in this case found that Millighan's allegations were rebutted not by the record in *the defendant's* case, but rather by the record in *Millighan's* case. This was not the proper analysis. "The Act itself contemplates that the trial court will look only to the record of the subject petitioner's case." *Id.* ¶ 43. Accordingly, the circuit court may not "consider the record of proceedings not involving the petitioner whose case is before the court." *Id.* ¶ 44. Thus, the circuit court erred in concluding that the defendant had failed to establish conclusiveness by virtue of Millighan's allegations being in conflict with the record from his trial. In a second-stage postconviction proceeding, such a conclusion may only be drawn from a review of the petitioner's case alone.

¶ 12 Further, when we look only at the defendant's case, Millighan's allegations are not conclusively and positively rebutted by anything in the defendant's trial record. The allegations naturally conflict with the identifications made by the liquor store employees, but some degree of conflict is to be expected in this situation. See *People v. Robinson*, 2020 IL 123849, ¶ 57 ("[Requiring a lack of conflict] would be fundamentally illogical. If the new evidence of innocence does not contradict the evidence of petitioner's guilt at trial, the filing of the successive petition would be pointless, and the purpose of the Act would be rendered meaningless, which is a result that must be studiously avoided."). Moreover, the witnesses' identifications are not of the same conclusive character as a medical examiner's testimony regarding the number of times that a victim had been shot, as was the case in *Sanders*. The mere fact that the witnesses identified the defendant as the shooter does not positively rebut Millighan's allegations at this stage of proceedings.

¶ 13 Having determined that the circuit court in this case conducted a flawed analysis of the defendant's claim, we must now apply the correct analysis. See *id.* ¶ 61. First, Millighan's affidavit is indeed newly discovered, as the defendant could not have been expected to obtain such selfincriminating evidence from Millighan earlier. See *People v. Molstad*, 101 Ill. 2d 128, 134–35 (1984) (finding that self-incriminating post-trial affidavits from codefendants qualified as newly discovered). Second, Millighan's assertions are material because, if they are true and believed by a jury, as we must assume they would be at this stage in proceedings, they would undermine the State's evidence of guilt and would tend to show the defendant's innocence. See *Coleman*, 2013 IL 113307, ¶ 96 ("Material means the evidence is relevant and probative of the petitioner's innocence."). Third, the allegations are non-cumulative, as the trial record does not otherwise contain this account of the evening in question. See *id.* ("Noncumulative means the evidence adds to what the jury heard.").

¶ 14 Lastly, Millighan's proffered testimony, if true, is of such conclusive character that it would probably produce a different result on retrial. For this element, "the question is whether the evidence supporting the postconviction petition places the trial evidence in a different light and undermines the court's confidence in the judgment of guilt." *Robinson*, 2020 IL 123849, ¶ 48. Millighan's allegations in this case satisfy that requirement. If a jury were to believe Millighan's testimony that he was involved in the robbery and if it were to believe his claim that the defendant was not involved in any way, then it is hard to believe that the jury would still convict the defendant based solely on the contrary identifications of the store employees. *Cf. People v. Wilson*, 2022 IL App (1st) 192048, ¶ 75 ("If taking [that] affidavit testimony *as true* means anything at all, it must mean that a juror, hearing from [the new witness] at a hypothetical retrial, would *believe* his testimony." (alterations and emphases in original) (quoting *People v. Brooks*, 2021 IL App (4th)

200573, ¶ 44)). Given the limited evidence of guilt presented at trial, which consisted only of the employees' identifications and the presumptive blood test, an exoneration from Millighan would probably change the result if a jury were to hear and believe his testimony. At the very least, Millighan's allegations place the trial evidence in a different light and undermine confidence in the verdict. Accordingly, the defendant has made a substantial showing of actual innocence sufficient to advance his petition to a third-stage evidentiary hearing.

¶ 15 While the State concedes that result, it asserts that two other pieces of evidence that the defendant discusses in his petition, specifically expert testimony regarding witness identifications and a 2013 serology test that allegedly showed that the substance on the defendant's shoe was not blood, do not qualify as newly discovered evidence of actual innocence. However, the actualinnocence claim in the defendant's petition relies only on Millighan's affidavit and not these other pieces of potential evidence, so we will not address this issue. To the extent that the State's argument on this issue might be asking for a ruling that this additional evidence should not be admissible at the third-stage evidentiary hearing on the defendant's actual-innocence claim, we will not provide an advisory opinion regarding the admissibility of evidence at a future hearing when that question has not yet been litigated below. See *People v. Stitts*, 2020 IL App (1st) 171723, ¶ 33 (declining to opine on a future evidentiary question that the circuit court had not yet had an opportunity to address); *People v. Latimer*, 403 Ill. App. 3d 595, 599–600 (2010) (declining to opine on a future evidentiary question that was outside of the scope of the order on review).

¶ 16 For the foregoing reasons, we reverse the order dismissing the defendant's successive petition for postconviction relief and remand for the circuit court to conduct third-stage proceedings on the petition.

¶ 17    Reversed and remanded with instructions.

---

*People v. Michael McCoy, 2023* **IL App (1st) 220148**

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, 86 CR 10404, Honorable Michael Clancy. Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Debra Loevy, Lauren Myerscough-Mueller EXONERATION PROJECT 311 N. Aberdeen Street, 3rd Floor Chicago, IL 60607 (312) 789-4955 |
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney of Cook County Enrique Abraham, Paul E. Wojcicki, Amy McGowan – Asst. State's Attorneys, Of Counsel 309 Richard J. Daley Center Chicago, IL 60602 (312) 603-5496 |