2025 IL App (1st) 231025-U
Order filed: March 6, 2025

FIRST DISTRICT
FOURTH DIVISION

No. 1-23-1025

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court of |
| Plaintiff-Appellee, | ) ) | Cook County. |
| v. | ) ) | No. 12 CR 21174 |
| CHRISTOPHER GREGORY, | ) ) | Honorable Geraldine D'Souza, |
| Defendant-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE ROCHFORD delivered the judgment of the court.
Justices Hoffman and Ocasio concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Dismissal of defendant's postconviction petition is affirmed in part and reversed in part, and this matter is remanded for an evidentiary hearing, where defendant's claim of actual innocence was improperly dismissed at the second stage.

¶ 2    Defendant-appellant, Christopher Gregory, appeals from the second-stage dismissal of his postconviction petition, filed pursuant to the Post-Conviction Hearing Act (Act). 725 ILCS 5/122-1 *et seq*. (West 2020). For the following reasons, we affirm in part reverse in part and remand for an evidentiary hearing solely on defendant's claim of actual innocence.

¶ 3    The State charged defendant and co-defendant, Sebrint Randolph, with aggravated vehicular hijacking, aggravated kidnapping, armed robbery, and aggravated battery, with all charges stemming from an incident occurring on or about October 3, 2012, involving the alleged

victim Michael Ligue. On December 1, 2016, codefendant Randolph pleaded guilty to aggravated vehicular hijacking and received a 15-year sentence. In addition, the State nol-prossed the aggravated kidnapping charge against defendant. A June 2017 jury trial was thereafter held on the remaining charges against defendant.

¶ 4     At trial, Ligue testified that around 8:30 p.m. on October 3, 2012, he arranged to buy cannabis from Randolph. Ligue then drove two blocks from his home to meet Randolph in Blue Island, Illinois. When Ligue arrived, he saw Randolph standing on the corner. Randolph then walked to Ligue's vehicle door, pulled it open, put a gun in Ligue's face, and told him to get out of the vehicle.

¶ 5     Randolph then held the gun to the back of Ligue's head, walked him down the alley, then pushed Ligue into a garage. Randolph hit the left side of Ligue's head with the gun, splitting open Ligue's eye, which began to bleed. Randolph then hit the right side of Ligue's head with his fist. At that point Ligue noticed two more people in the garage. Thereafter, one of those two men—whom Ligue identified as defendant—stood over Ligue with the gun while Randolph went through Ligue's pockets and took his wallet, money, and cell phone.

¶ 6     Randolph left the garage for five to ten minutes while defendant continued to stand over Ligue pointing the gun at him. Upon Randolph's return, he told Ligue his car was at the end of the alley. Ligue went to his car, saw that the dashboard touchscreen and radio had been removed, then drove home. His mother called the police, and Ligue told the police what had happened to him before being taken to a hospital. Ligue was again questioned by the police at the hospital.

¶ 7     Around 10:50 p.m. that same evening, based upon information provided by Ligue, police encountered Randolph, defendant and the third man sitting in another vehicle in an alley near Randolph's home. At the time, Randolph was in the driver seat and defendant was sitting in the

back seat. The three were placed under arrest and from the vehicle the police recovered a loaded firearm from the front seat and a vehicle radio and housing from in the rear seat. A wallet and cell phone were recovered the next day from a garbage can near the original incident.

¶ 8     Forensic evidence introduced at trial included Randolph's fingerprints found in Ligue's vehicle and defendant's fingerprints located on the radio recovered from the rear seat of Randolph's vehicle. No fingerprints were located on the recovered firearm.

¶ 9     At the conclusion of trial, the jury found defendant not guilty of aggravated vehicular hijacking but guilty of armed robbery and aggravated battery. The trial court sentenced defendant to 21 years' imprisonment for armed robbery and 2 years' imprisonment for aggravated battery, with the sentences to be served concurrently. Defendant filed a direct appeal, and on March 7, 2019, this court entered an agreed order granting defendant's motion for summary disposition and directing the Clerk of the Cook County Circuit Court to vacate the $5 Electronic Citation Fee imposed upon defendant at sentencing.

¶ 10    On May 20, 2019, defendant filed a *pro se* postconviction petition alleging both ineffective assistance of counsel on direct appeal and that the trial court erred in sentencing. Defendant's petition claimed that his appellate counsel improperly failed to allege that trial counsel was ineffective for: (1) failing to inform defendant that if he were found guilty at trial, he would face a mandatory 15-year firearm sentencing enhancement, and (2) failing to investigate and call defendant's mother, Lisa Johnson, and co-defendant Randolph, as alibi witnesses. Defendant also claimed that the trial court erred in imposing a 15-year firearm enhancement.

¶ 11    In his attached affidavit, dated May 14, 2019, defendant averred that his mother would testify that defendant was at home with her watching television between 9 and 10:30 p.m. on October 3, 2012. Defendant further averred that codefendant Randolph would testify that

defendant was not present when the crimes against Ligue took place and defendant had no knowledge of them, as defendant did not meet up with Randolph until 10:40 p.m. that night.

¶ 12    The circuit court found that defendant's *pro se* petition was not frivolous or patently without merit, docketed it for second-stage proceedings, and appointed postconviction counsel to represent defendant. On August 11, 2022, defendant's postconviction counsel filed a supplemental petition.

¶ 13    Therein, counsel reasserted the claims contained in the *pro se* petition that defendant was prejudiced by trial counsel's improper failure to interview defendant's mother or Randolph or call either of them to testify at trial as alibi witnesses. This argument was now supplemented by additional support in the form of an affidavit executed by Randolph on April 19, 2022, in which Randolph averred that defendant was not with him when Randolph committed "the crime" on October 3, 2012, defendant arrived at Randolph's home later that evening, and that Randolph's attorney told him to say someone else was with him so that he could receive a plea deal, but Randolph did not "specifically name" defendant.

¶ 14    Counsel also asserted a new claim—"a free-standing claim of actual innocence"—that was "supported by defendant's own affidavit and that of Sebrint Randolph." Counsel's supplemental petition alleged that this argument was based on new evidence, because Randolph was not "available" as a witness for defendant at trial because he "was a co-defendant, having been charged with the same or similar charges involving the same event" so that "[t]estifying would have resulted in his testimony being used against him" and therefore '[i]f called to testify" Randolph "had the right to invoke his 5th Amendment right against self-incrimination."

¶ 15    On December 19, 2022, the State filed a motion to dismiss both the *pro se* and supplemental petitions. With respect to the claim of actual innocence and as relevant to this appeal, therein the

State argued that Randolph's new affidavit was not credible considering contrary evidence provided during the proceedings in his own criminal case in which he plead guilty. The State also asserted that defendant was improperly using Randolph's new affidavit to support both his ineffective assistance of counsel and his actual innocence claim. Finally, the State noted that regardless, the new evidence presented by defendant in his petition would not have changed the outcome of defendant's trial considering Ligue's eyewitness identification of defendant and the fingerprint evidence linking defendant to the incident.

¶ 16    A hearing on the motion to dismiss was held on May 19, 2023. At the hearing, the parties specifically discussed the content and specifics of the guilty plea proceedings in Randolph's case, but no transcripts or other record of those proceedings was introduced into the record.

¶ 17    At the conclusion of the hearing, the postconviction court granted the State's motion to dismiss. As to the claim of actual innocence, the court found: "The mother's testimony was available at the time, but she was not called as a witness, and the co-defendant's testimony would not have changed the verdict in light of the eyewitness identification as well as the physical evidence linking the petitioner to the crime."

¶ 18    Defendant filed a timely notice of appeal later that same day. On appeal, defendant challenges only the dismissal of his claim of actual innocence at the second stage. As such, he has forfeited any argument as to the remaining postconviction claims raised below, and the dismissal of those other claims is therefore affirmed. Ill. S. Ct. R. Rule 341(h)(7) (eff. Oct.1, 2020) (Points not argued in appellate brief are forfeited); *People v. Guest*, 166 Ill. 2d 381, 414 (1995).

¶ 19    The Act provides a three-stage procedure for criminal defendants to raise constitutional issues about their trial or sentencing that could not have been raised on direct appeal. *People v. Morales*, 2019 IL App (1st) 160225, ¶ 17. At the first stage, the postconviction court evaluates the

petition and determines whether it is frivolous or patently without merit. *Id*. If the court determines that the petition is not frivolous or patently without merit, it is docketed for second-stage proceedings, during which counsel can be retained or appointed, and defendant must show that his petition makes a substantial showing of a constitutional violation. *Id*. The State can participate for the first time at the second stage and either answer the petition or move to dismiss. *Id*. If a motion to dismiss is filed, all well-pleaded facts in the petition and accompanying affidavits that are not positively rebutted by the original trial record are taken as true and the court does not engage in fact-finding or credibility determinations nor resolve any evidentiary questions. *People v. Velasco*, 2018 IL App (1st) 161683, ¶¶ 90, 117. "Since there are no factual issues at the dismissal stage of the proceedings, the question is essentially a legal one, which requires the reviewing court to make its own independent assessment of the allegations of the petition and supporting documentation." *People v. Sanders*, 2016 IL 118123, ¶ 31. As such, our review of second-stage dismissals is *de novo*. *People v. Minniefield*, 2014 IL App (1st) 130535, ¶ 58.

¶ 20    To succeed on a claim of actual innocence, defendant must present newly discovered, material, noncumulative evidence that is so conclusive that it probably would change the result on retrial. *People v. Robinson*, 2020 IL 123849, ¶ 47. Newly discovered evidence is evidence that was discovered after trial and that defendant could not have discovered earlier through the exercise of due diligence. *Robinson*, 2020 IL 123849, ¶ 47. We initially find that defendant met his second-stage burden to present newly discovered evidence by offering the April 19, 2022, affidavit of Randolph.

¶ 21    First, the 2022 affidavit of codefendant Randolph was obviously executed and therefore also discovered well after defendant's 2017 trial. Second, we also agree with defendant that it could not have been discovered earlier through the exercise of due diligence. It is well-recognized

that new statements of codefendants are considered newly discovered because no amount of diligence could have forced them to testify against their fifth amendment right to avoid self-incrimination. *People v. Edwards*, 2012 IL 111711, ¶ 38; *People v. Beard*, 2023 IL App (1st) 200106, ¶ 50.

¶ 22 In reaching this conclusion, we reject the State's contention that the content of Randolph's affidavit cannot be considered newly discovered where defendant alternatively used the same affidavit to support his assertion of ineffective assistance of trial counsel. As the State asserted in its motion to dismiss: "Petitioner cannot have it both ways, either his trial counsel knew that Randolph would have testified in Petitioner's favor, and he should have called him at trial or this information in the affidavit is newly discovered and properly used in support of the claim of actual innocence." Our supreme court has rejected this argument, concluding that a defendant can alternatively "*plead* a 'free-standing' claim of actual innocence and use the same evidence to *plead* a claim of constitutional trial error." (Emphasis added.) *People v. Flournoy*, 2024 IL 129353, ¶ 74. The only relevant caveat is that "if certain evidence *establishes* a 'free-standing' claim of actual innocence, that same evidence cannot also *establish* a claim of constitutional trial error because evidence cannot be both 'new' and 'not new' at the same time." (Emphasis added.) *Id.* ¶ 73. At the second stage, we are concerned with the sufficiency of defendant's pleading, and he therefore allowably utilized Randolph's affidavit to plead both alternative arguments below.

¶ 23 We also conclude that defendant made a sufficient showing that Randolph's affidavit constituted material and noncumulative evidence. Notably, the State essentially concedes this issue, where it never—either below or on appeal—challenged defendant's claim of actual innocence on this basis. In any case, evidence is material when it is relevant and probative of defendant's innocence. *Robinson*, 2020 IL 123849, ¶ 47. Noncumulative evidence adds to the

information that the jury heard at trial. *Id*. Courts have repeatedly concluded that affidavits of a codefendant attesting that a defendant was not involved in the crimes charged can satisfy these requirements, where no such testimony was presented at trial. See *People v. Simms*, 2021 IL App (1st) 161067-B, ¶ 23; *People v. McCoy*, 2023 IL App (1st) 220148, ¶ 13.

¶ 24    Finally, the conclusive character element refers to evidence that, when considered along with the trial evidence, would probably lead to a different result. *Robinson*, 2020 IL 123849, ¶ 47. The conclusive character of the new evidence is the most important element of an actual innocence claim. *Id*. This element requires defendant to present evidence placing the trial evidence in a different light and undermining the court's confidence in the judgment of guilt. *Id*. ¶ 48. "Probability, rather than certainty, is the key in considering whether the fact finder would reach a different result after considering the prior evidence along with the new evidence." *Id*. ¶ 48. As such, new evidence "need not be completely dispositive of an issue to be likely to change the result upon retrial." *People v. Davis*, 2012 IL App (4th) 110305, ¶ 64.

¶ 25    In dismissing defendant's actual innocence claims, the court below concluded that this element was not met where Randolph's new testimony "would not have changed the verdict in light of the eyewitness identification as well as the physical evidence linking the petitioner to the crime." The State makes the same contention on appeal.

¶ 26    However, as to the victim's eyewitness identification of defendant, that evidence would ultimately have to be weighed against the evidence contained in Randolph's affidavit—which must at the second stage be taken as true—that defendant was not present at the time of the incident. There is no way to evaluate and adjudicate the relative merits of this evidence without making a credibility determination that would be inappropriate at the second stage of proceedings. *People v. Carter*, 2013 IL App (2d) 110703, ¶ 74.

¶ 27    And as to as "the physical evidence linking the petitioner to the crime," that evidence consisted solely of defendant's fingerprints found on the radio and housing recovered from the backseat of Randolph's vehicle, as defendant's fingerprints were not found either in the victim's vehicle or on the recovered firearm. Where defendant was arrested well after the incident in the backseat of Randolph's vehicle and in the vicinity of the radio and housing, Randolph's new evidence that defendant did not arrive until after the incident may be contradictory, but it is not positively rebutted by the physical evidence presented at trial. *Robinson*, 2020 IL 123849, ¶ 60 ("[R]ecognizing the existence of a conflict with the trial evidence is not the same as finding that the new evidence is positively rebutted. For new evidence to be positively rebutted, it must be clear from the trial record that no fact finder could ever accept the truth of that evidence, such as where it is affirmatively and incontestably demonstrated to be false or impossible."). To conclude otherwise at the second stage would require an exercise in fact-finding that is not permissible at the second stage.

¶ 28    Removing impermissible credibility determinations and fact-finding from our analysis and taking defendant's well-pleaded allegations and his supporting affidavits as true, we find that defendant has met his second-stage pleading burden of placing the trial evidence in a different light so as to undermine our confidence in the judgment of guilt. *Robinson*, 2020 IL 123849, ¶ 47.

¶ 29    In reaching this conclusion, we reject two additional, specific arguments raised by the State on appeal. First, we reject the State's contention that the trial record positively rebuts defendant's actual innocence claim because in his answer filed before trial, defendant asserted that his defense at trial would consist of challenging that the State's evidence would prove him guilty beyond a reasonable doubt and/or the affirmative defense of compulsion. Specifically, the State contends that "the record of defendant's assertion of the affirmative defense of compulsion—that he

committed the offense because Randolph forced him to—positively rebuts the allegations in Randolph's affidavit that Randolph acted alone when he committed the offense, and defendant was not present." We reject this argument for two reasons.

¶ 30    What the State is really highlighting in this argument is a purported *conflict* between the assertion of a compulsion defense and the new evidence that defendant was not even present at the incident. As we have explained above, however, "recognizing the existence of a conflict with the trial evidence is not the same as finding that the new evidence is positively rebutted." *Robinson*, 2020 IL 123849, ¶ 60. That defendant contemplated asserting a compulsion defense as one possible defense may be inconsistent with the new evidence of actual innocence, but that fact does not positively rebut the new evidence. In addition, and as the State itself acknowledges, defendant abandoned this alternative defense and did not present any evidence or argument in support of compulsion at trial. Thus, with respect to the issues and evidence presented and argued at defendant's actual trial, there is no such conflict with defendant's new evidence of actual innocence on this basis, let alone any indication that it is "clear from the trial record that no fact finder could ever accept the truth of that evidence, such as where it is affirmatively and incontestably demonstrated to be false or impossible." *Id*.

¶ 31    We also reject the State's argument that defendant's actual innocence claim was properly dismissed because "Randolph's sworn testimony from his plea proceedings that defendant participated in the offenses, contradicted his attestations in his 'new' affidavit that defendant was not even present; thus, it was an inherently unreliable 'recantation' of that 'sworn testimony.' " This argument is improper for two reasons.

¶ 32    First, in this argument the State purports to make use of evidence not from defendant's trial proceedings or contained in defendant's postconviction petition, but rather evidence from a

separate guilty plea proceeding involving Randolph. As our supreme court has recognized, at the second stage the "Act itself contemplates that the trial court will look only to the record of the subject petitioner's case." *People v. Sanders*, 2016 IL 118123, ¶ 43. As such, in the context of a second-stage postconviction proceeding our supreme court has "reject[ed] the argument that the trial court may consider the record of proceedings not involving the petitioner whose case is before the court." *Id*. ¶ 44.

¶ 33 Second, even considering this evidence we note that it is "true that recantation testimony is regarded as inherently unreliable and that a court will not grant a new trial on that basis absent extraordinary circumstances. [Citation.] However, that determination is not made at the motion to dismiss stage of postconviction proceedings where well-pleaded facts must be taken as true." *Id.* ¶ 33. Accepting the State's argument here would violate this precept.

¶ 34 In sum, we conclude that defendant's claim of actual innocence should advance to a third-stage evidentiary hearing. It is at that hearing that the postconviction court will decide the weight to be given the testimony and evidence, make credibility determinations, and resolve any evidentiary conflicts. *Carter*, 2013 IL App (2d) 110703, ¶ 74; *Velasco*, 2018 IL App (1st) 161683, ¶ 118. We express no opinion on these matters.

¶ 35 For the foregoing reasons, we reverse the judgment of the circuit court dismissing defendant's claim of actual innocence and remand for a third-stage evidentiary hearing solely on that claim. The dismissal of the remaining postconviction claims raised below is affirmed.

¶ 36 Affirmed in part and reversed in part; cause remanded.