2025 IL App (1st) 232096-U

SECOND DIVISION
June 24, 2025

No. 1-23-2096

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of |
| Plaintiff-Appellee, | ) ) | Cook County. |
| v. | ) ) | No. 00 CR 1137 |
| AHMAD SIMMS, | ) ) | Honorable Stanley J. Sacks, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE HOWSE delivered the judgment of the court.
Presiding Justice Van Tine and Justice Ellis concurred in the judgment.

ORDER

¶ 1    *Held*: We reverse the judgment of the circuit court of Cook County granting the State's motion to dismiss defendant's successive postconviction petition without an evidentiary hearing; the petition makes a substantial showing of a claim of actual innocence based on a co-defendant's recantation of defendant's involvement in the offense.

¶ 2    In 2002, the circuit court of Cook County convicted defendant, Ahmad Simms on a theory of accountability of first degree murder, armed robbery, and home invasion, and sentenced him to an aggregate term of 60 years' imprisonment. In May 2021 this court reversed the trial court's judgment denying defendant's motion for leave to file a successive postconviction petition and remanded the case for further proceedings. On remand, the case

proceeded to the second stage of postconviction proceedings and the State filed a motion to dismiss the petition. On October 16, 2023, the trial court granted the State's motion to dismiss. For the following reasons, we reverse and remand.

¶ 3                                    BACKGROUND

¶ 4      We previously discussed the evidence at defendant's trial and the contents of defendant's successive postconviction petition in detail in *People v. Simms*, 2021 IL App (1st) 161067-B (*Simms I*). In summary, the State indicted defendant, Ahmad Simms, and codefendants Lino Niles and Curtis King, for first degree murder, home invasion, armed robbery, residential burglary, and possession of burglary tools. The case against defendant and Niles proceeded to a simultaneous jury trial, with separate juries, on the murder, home invasion, and robbery counts in the indictment. *Simms I*, 2021 IL App (1st) 161067-B, ¶ 4. In sum, defendant and Niles forced entry to the victim's apartment; Niles shot and killed the victim; and defendant and Niles took property from the apartment. The State proceeded against defendant on a theory of accountability for the murder. *Simms I*, 2021 IL App (1st) 161067-B, ¶ 7.

¶ 5      The evidence at defendant's trial included defendant's handwritten and videotaped confessions. Defendant filed a motion to suppress those statements on the ground the statements were involuntary but the trial court denied that motion. *Simms I*, 2021 IL App (1st) 161067-B, ¶ 5. Defendant's statements admitted that defendant assisted Niles in breaking into the victim's apartment and taking property but stated that Niles shot the victim. *Simms I*, 2021 IL App (1st) 161067-B, ¶ 7. Additionally, an eyewitness testified they saw defendant and Niles walk out of the rear of the victim's building to the garbage and return inside. *Simms I*, 2021 IL App (1st)

- 2 -

161067-B, ¶ 30. Although the witness identified defendant from a photo array he could not later identify defendant in court—two years after the crime occurred. Defendant argues that the height estimate given by the witness of the person the witness saw walk out of the building and back with Niles describes King and not defendant. The owner of an automobile repair shop located on the same block as the victim's building also testified. Defendant's written statement admits defendant had been working at the repair shop the morning of the crime. In the statement defendant also wrote that when Niles approached defendant at the shop about robbing the victim, defendant took a crowbar to the victim's apartment with Niles. The owner of the shop where defendant had been working was confronted with his grand jury testimony that he let defendant borrow a pry bar that afternoon, but the owner could not recall giving that testimony. Chicago Police Department Detective Baker testified that defendant admitted having a pry bar with an orange handle when defendant and Niles went to the victim's apartment.

¶ 6      The owner testified that defendant and Niles came to the shop later that afternoon. The owner testified that defendant and Niles spoke to each other, and "they" tried to sell the owner a VCR. The owner testified to the grand jury that defendant had the VCR in his hand. The owner "told them I wasn't interested in it." Defendant and Niles left the VCR on a compressor in the shop. Later, Niles returned to the shop and asked the owner "about money for the VCR." The owner gave Niles $20 for the VCR. The owner testified that at that time Niles "had a little handbag like a briefcase." In his statement, defendant stated, "I *** sold the [VCR (and a television defendant admitted taking from the victim's apartment)] [to the shop owner.]" Defendant wrote "I *** sold the TV and VCR for *** 70 dollars." Defendant argues that there is

an inconsistency in the owner's testimony and what a detective testified the owner told the detective. Detective Baker testified that the owner told the detective that defendant tried to sell the owner a VCR with Niles present.

¶ 7      The owner also testified that Niles later admitted shooting the victim but the owner did not testify that defendant was with Niles at that time. The detective also testified that the owner identified Niles and defendant as being in the owner's shop the afternoon after the incident.

¶ 8      The victim's roommate testified that coins, a VCR, and a maroon attaché case were missing from the apartment. *Simms I*, 2021 IL App (1st) 161067-B, ¶ 30.

¶ 9      Following defendant's conviction and sentence, defendant filed a direct appeal, a petition for postconviction relief, and a petition for *habeas corpus*, none of which resulted in relief from defendant's convictions. In 2013, defendant filed a motion for leave to file a successive petition for postconviction relief supported, in part, by an affidavit by codefendant Lino Niles. The affidavit reads as follows:

> "I, Lino Niles do hereby declare & affirm that the following information within this affidavit is true and correct in substance and in facts:
>
> To whom it may concern I submit this affidavit in the form of a letter asking that it be taking [*sic*] as being true on the merits of my reasons of which I sincerely apologize for, or me including Droopy/Ahmad Simms in the case of which I committed murder. Some say that people do things out of fear because of the surrounding circumstances of those events [unreadable/stricken] taken place. I on

1-23-2096

the other hand chose differently and act simply out of 'revenge', and told the police that Droopie/Ahmad was with me when I did the murder-home invasion-armed robbery. I included him because I thought when police took guys to the police station in a sweep off my block and question'd them, that Droopie/Ahmad Simms was with the guys tellin [*sic*] the police about me[,] knowing that I didn't mess with nobody else on that block but him at that time. And Yes I considered Droopy at that time my best friend and felt that it was the ultimate betrayal for him to tell on me [unreadable] one I trusted other than myself out on these streets. However Droopie/Ahmad Simms knew about what happened just like everybody else because it happened in the hood. I just lied about certain things that whereas he really cared not to know. But I never told him I was the one who did it in no shape form or fashion, I just told him that I needed his help in selling some stuff so that I could get some money in my pocket. In the end the fact of the matter is, I lied to the police about Droopie/Ahmad Simms being involved to shift the blame from myself by all means possible. Even to the point where I took the police where he would spend the night before his mother would come & pick him up to go back home out the city. I told police he had the gun and that he had some of the stuff that I took out of the [apartment] hoping in the end by me doing so that I would be able to walk free or at least do a little time. But coming t [*sic*] the conclusion of things after everything was put on the table *** now realize in all my effortless rationale attempts that I actually caused an innocent person to be locked up who had

absolutely no involvement whatsoever. I know I have surely lost a friend but one thing for sure that I will not lose is 'my dignity' to do right as a man, no matter how long it has taken me to say the truth or will take me to say the truth.

I am truly sorry for getting Droopie locked up and I accept full responsibility of my actions in doing so. For my selfish means and ways of being free I even witness'd my sacrifices getting afflicted upon Droopie/Ahmad Simms by the police and know that the police had believed everything that I told them to the point they would go to those extreme measures just to get to the truth even if it wasn't the truth. I also apologize for him going through that physical abuse and any other abuse he may had or have suffered. I don't know in the end of what would be the outcome of me now admitting to the murder but just know that me and my other co-defendant Curtis King was the only two involved. Whether you believe me or not, and I'm not trying to be disrespectful when I say this, 'is totally up to you.' Am [*sic*] so in the event of everything that I've admitted to, not reaching [unreadable] hands of Droopie/Ahmad Simms in time. I just want to go on record and said that I'm sorry for getting you locked up and I hope that you can find it within your heart to forgive me if this [unreadable].

Pursuant to 28 U.S.C. 1746, 18 U.S.C. 1621 or 735 ILCS 5/1-109, I declare under penalty of perjury, that everything contained herein is true and accurate to the best of my knowledge and belief. I do declare and affirm that the

matter at hand is not taken either frivolously or maliciously and that I believe the foregoing matter is taken in good faith." *Simms I*, 2021 IL App (1st) 161067-B, ¶ 27.

¶ 10    Although "defendant did not explicitly raise a claim of actual innocence in his motion for leave to file a successive petition," we applied the rule of liberal construction to find that Niles's affidavit was "sufficient to raise a claim of actual innocence." *Simms I*, 2021 IL App (1st) 161067-B, ¶ 19. This court initially affirmed the trial court's order denying defendant's motion for leave to file a successive petition. In 2020, our supreme court issued a supervisory order directing this court to vacate our judgment and to consider the effect of *People v. Robinson*, 2020 IL 123849, "on the issue of whether defendant presented a colorable claim of actual innocence based on the affidavit presented with the motion for leave to file a successive post-conviction petition." In January 2021, this court, pursuant to the supervisory order, vacated our initial judgment and issued a new opinion. We reversed the trial court's judgment denying defendant's motion for leave to file a successive postconviction petition. *Simms I*, 2021 IL App (1st) 161067-B, ¶ 38. We found that Niles's affidavit constitutes new evidence (*Simms I*, 2021 IL App (1st) 161067-B, ¶ 23), "the newly discovered evidence in Niles's affidavit is not positively rebutted by the record (*Simms I*, 2021 IL App (1st) 161067-B, ¶ 35), and we found that "Niles's affidavit constitutes conclusive evidence that would probably lead to a different result at trial" (*Simms I*, 2021 IL App (1st) 161067-B, ¶ 37). However, in making that final determination, we applied " 'the low threshold applicable to a colorable claim of actual innocence' " which asks " 'only whether the new evidence *** could lead to acquittal on retrial.' *Robinson*, 2020 IL 123849, ¶

60." *Simms I*, 2021 IL App (1st) 161067-B, ¶ 36. We stated that "[t]o answer that question, 'we ascertain whether the supporting affidavits raise the probability that it is more likely than not that no reasonable juror would have convicted [defendant.]' [Citation.]" *Simms I*, 2021 IL App (1st) 161067-B, ¶ 36 (citing *Robinson*, 2020 IL 123849, ¶ 60).

¶ 11    On remand, the State filed a motion to dismiss the successive petition. The State argued, as it pertains to this appeal, that the petition failed to "prove a substantial violation of [defendant's] constitutional rights." The State argued that the affidavit, taken as true and considered along with all of the other trial evidence, is not so conclusive that it would probably change the result of the trial. According to the State, "Niles does not directly take responsibility for the murder, he hedges, and he takes [defendant] out. [Defendant] has admitted his complicity in this case and was identified as selling the goods that were taken and was seen leaving the scene of the crime by an uninvolved party." The State argued that reasonable jurors would still convict defendant. On October 16, 2023, the trial court granted the State's motion to dismiss.

¶ 12    This appeal followed.

¶ 13                                ANALYSIS

¶ 14    This is an appeal of an order granting the State's motion to dismiss a successive postconviction petition claiming actual innocence.

> "Because the court dismissed the defendant's petition at the second of the
> [Post-Conviction Hearing] Act's three stages, our review is focused on 'whether
> the allegations in the petition, liberally construed in favor of the petitioner and

taken as true, are sufficient to invoke relief under the Act.' [Citation.] For a claim asserting actual innocence, the defendant must make a 'substantial showing' ([citation]) that the evidence supporting his claim is 'newly discovered, material and not merely cumulative, and of such conclusive character that it would probably change the result on retrial' ([citations])." *People v. McCoy*, 2023 IL App (1st) 220148, ¶ 7.

¶ 15    "For the second stage to not be superfluous for a successive petition, the 'substantial showing' required at the second stage must be greater than the 'probability' required for a successive petition to receive leave for filing. [Citation.]" *People v. Jackson*, 2020 IL App (1st) 143025-B, ¶ 28. "[T]he substantial showing of a constitutional violation that must be made at the second stage is 'a measure of the legal sufficiency of the petition's well-pled allegations of a constitutional violation, which if proven at an evidentiary hearing, would entitle petitioner to relief.' (Emphasis omitted.) [Citation.]" *People v. Dupree*, 2018 IL 122307, ¶ 29. "The dismissal of a successive postconviction petition without a third-stage evidentiary hearing is reviewed *de novo*. [Citation.] Under *de novo* review, we perform the same analysis that a trial judge would perform." *People v. Thames*, 2021 IL App (1st) 180071, ¶ 80.

¶ 16    The "conclusiveness of the new evidence is the most important element of an actual innocence claim" *People v. Sanders*, 2016 IL 118123, ¶ 47. To find that the evidence is "of such conclusive character that it would probably change the result on retrial" and advance to the third stage of postconviction proceedings, this court "must be able to find that [defendant's] new

evidence is so conclusive that it is more likely than not that no reasonable juror would find [defendant] guilty beyond a reasonable doubt." *Sanders*, 2016 IL 118123, ¶ 47 (citing *People v. Edwards*, 2012 IL 111711, ¶ 40). In making that finding, this court may consider whether the evidence in support of a claim of actual innocence "merely adds conflicting evidence to the evidence adduced at the trial." See *Sanders*, 2016 IL 118123, ¶¶ 48-52, see also *Robinson*, 2020 IL 123849, ¶ 58 (noting that our supreme court has "made reference to the insufficiency of new evidence that conflicts with trial evidence" "in cases that decided whether a petition should advance to a third-stage evidentiary hearing" (citing *Sanders*)).

¶ 17   Nonetheless, the supporting evidence "must be taken as true unless [it is] positively rebutted by the record of the original trial proceedings." *Sanders*, 2016 IL 118123, ¶ 48, *McCoy*, 2023 IL App (1st) 220148, ¶ 14 (quoting *People v. Wilson*, 2022 IL App (1st) 192048, ¶ 75 ("If taking [that] affidavit testimony *as true* means anything at all, it must mean that a juror, hearing from [the new witness] at a hypothetical retrial, would *believe* his testimony. [Citation.]" (Emphases in original and internal quotation marks omitted.))). In making this finding the court may not rely on credibility determinations. *Dupree*, 2018 IL 122307, ¶ 29 (" '[t]he inquiry into whether a post-conviction petition contains sufficient allegations of constitutional deprivations does not require the circuit court to engage in any fact-finding or credibility determinations.' [Citation.]"). "Credibility determinations may be made only at a third-stage evidentiary hearing." *Sanders*, 2016 IL 118123, ¶ 42.

¶ 18     This court has already found that Niles's affidavit is newly discovered evidence that is material and noncumulative. *Simms I*, 2021 IL App (1st) 161067-B, ¶ 23 ("We find the affidavit constitutes new evidence.). However, our previous finding that "Niles's affidavit constitutes conclusive evidence that would probably lead to a different result at trial" (*Simms I*, 2021 IL App (1st) 161067-B, ¶ 37) does not control. A different standard than we applied in *Simms I* now applies to whether the evidence in the affidavit would probably change the result on retrial (that being, whether the affidavit makes a "substantial showing"). See *Robinson*, 2020 IL 123849, ¶¶ 43-44 (comparing the "substantial showing required to avoid dismissal at the second stage" with a "request for leave to file a successive petition").

¶ 19     Defendant argues the evidence in Niles's affidavit makes a substantial showing of a constitutional violation because it would probably change the result on retrial where Niles's affidavit, liberally construed and taken as true, "establishes that only Niles and [King] were actually involved in the incident *** and that [defendant] only became a suspect because Niles *** lied to the police." Defendant argues the affidavit may reasonably be construed as exculpating defendant because Niles averred that defendant "had no involvement whatsoever" in the offense.

¶ 20     The State responds the affidavit, which does not state that defendant was not present during the crimes, when construed against the trial evidence including defendant's confession, is not of such conclusive character that it would probably change the result at retrial. Defendant also argues the affidavit "places the trial evidence in a different light, undermines confidence in

the judgment of guilt, and further weakens the State's case *** in areas where there were weaknesses to begin with." The alleged "areas of weakness" defendant identifies are the voluntariness and source of defendant's statements, the strength of the identification by the eyewitness who testified to seeing defendant in the back of the victim's building, and an alleged inconsistency in the shop owner's testimony at trial and the owner's statements to police as testified to by a detective. Defendant argues that these weaknesses actually corroborate Niles's statements in the affidavit. Defendant also attacks the trial court's reasoning; but, as the State points out, our review is *de novo*.

¶ 21    The State, citing *People v. Evans*, 2017 IL App (1st) 143268, ¶ 30 ("An actual innocence claim does not merely challenge the strength of the State's case against the defendant."), responds defendant "merely seeks to reassess the strength of the trial evidence, and he has failed to make a substantial showing that *** Niles' affidavit met [the] conclusive requirement." The State notes that Niles's statement was not evidence at defendant's trial; and assuming Niles testified at a retrial, the jury would still be confronted with defendant's confession which, the State argues, is corroborated by the witnesses' testimony. Thus, the State argues, defendant failed to show that Niles's testimony is "conclusive," even taken as true.

¶ 22    The State further argues that Niles's statements in the affidavit are too vague to be conclusive. The State claims the affidavit fails to make a substantial showing of actual innocence because Niles failed to specify that defendant was not present for any of the offenses for which defendant was convicted.

¶ 23    We reject the State's "vagueness" argument because we must liberally construe the affidavit in defendant's favor. *Sanders*, 2016 IL 118123, ¶ 31 ("The question raised in an appeal from an order dismissing a postconviction petition at the second stage is whether the allegations in the petition, liberally construed in favor of the petitioner and taken as true, are sufficient to invoke relief under the Act."), *People v. Ealy*, 2024 IL App (1st) 221748, ¶ 33 (citing *Sanders*). In his affidavit, Niles averred that he lied to police about defendant's involvement in the crime, that he and King were the only two people involved in the crime, and, most importantly, that defendant is innocent. Niles's statement that he and King were the only two "involved," although not clear, could be considered exonerating.

¶ 24    Giving the affidavit a liberal construction means that we view the affidavit "with a lenient eye" (*People v. Thomas*, 2014 IL App (2d) 121001, ¶ 48 (discussing liberal construction at the first stage of postconviction proceedings)), and that we may infer reasonable facts from the evidence (see *People v. Morales*, 2019 IL App (1st) 160225, ¶ 38 (finding at first stage that "[w]hile we must liberally construe the facts pled, we can draw no inference from facts that do not appear in the petition's allegations or supporting evidence")). Therefore, we agree with defendant that "[c]onstruing the factual assertions liberally in [defendant's] favor, Niles' affidavit should be taken to mean that [defendant] ***had no involvement whatsoever in the incident giving rise to the charged offenses."

¶ 25    At the leave to file stage, we noted "the indefiniteness in many of Niles's averments." *Simms I*, 2021 IL App (1st) 161067-B, ¶ 35. However, we found those concerns to be "of no

matter at the leave to file stage" where the well-pleaded allegations not positively rebutted by the trial record are taken as true and liberally construed in favor of defendant. *Simms I*, 2020 IL App (1st) 161067-B, ¶ 35 (citing *Robinson*, 2020 IL 123849, ¶ 45, *Sanders*, 2016 IL 118123, ¶¶ 37, 42, *People v. Coleman*, 183 Ill. 2d 366, 380 (1998)). The same rules of construction apply at this stage of proceedings. *Sanders*, 2016 IL 118123, ¶ 31. Further, we must assume at this stage of proceedings that the jury would believe Niles upon retrial. *Wilson*, 2022 IL App (1st) 192048, ¶ 75 (citing *People v. Brooks*, 2021 IL App (4th) 200573, ¶ 44). See also *McCoy*, 2023 IL App (1st) 220148, ¶ 14. Thus, while we concede there is some "vagueness and uncertainty" in the affidavit, that is a matter that must be resolved at an evidentiary hearing, not at the second stage where the evidence is taken as true and construed liberally in favor of defendant. As stated above, applying a liberal construction to the affidavit we find that the affidavit can be construed to *completely* exonerate defendant.

¶ 26     Whether the fact, asserted by the State, that Niles's affidavit "is clearly contradicted by the trial testimony," is irrelevant. *Robinson*, 2020 IL 123849, ¶ 57 ("If the new evidence of innocence does not contradict the evidence of petitioner's guilt at trial, the filing of the successive petition would be pointless, and the purpose of the Act would be rendered meaningless, which is a result that must be studiously avoided."). Further, we do not find that defendant is directly attacking the voluntariness of his confession in this proceeding; defendant is only contending that upon hearing Niles's evidence, and believing it, a jury would probably weigh all of the evidence—the physical evidence, the confession (and defendant's claims of

coercion) and the witnesses' testimony—differently. Our decision does not rely on defendant's confession being involuntary. Therefore, the State's argument that the "affidavit offers no new evidence relevant to whether defendant's confession was coerced and involuntary" is inapposite. Given the nature of Niles's averments which we must liberally construe to mean that defendant had no involvement in the offense—including not even being present—and taken as true, the strength of the evidence at trial is not determinative in this case. See *Class*, 2023 IL App (1st) 200902, ¶¶ 56-57 (court must weigh new evidence against the strength of the evidence at trial to determine whether new evidence is "conclusive enough" to probably change the result upon retrial). It is within the province of the jury to discount the other evidence entirely, especially if the jury believes Niles's averments. See generally *People v. Walls*, 2022 IL App (1st) 200167, ¶ 29 ("a trier of fact is free to accept or reject as much or as little as it pleases of a witness's testimony").

¶ 27 We also reject the State's argument that defendant is not entitled to a third-stage evidentiary hearing because a jury on retrial would be faced with both Niles's exculpatory testimony and, conversely, defendant's confession and the witnesses' testimony. "[A]t this stage we are not concerned with whether the new evidence is more convincing than the other evidence in the record. Rather, we are concerned only with the character of the new evidence and whether it is of such a nature that it 'places the trial evidence in a different light and undermines the court's confidence in the judgment of guilt.' [Citations.]" *People v. Vann*, 2023 IL App (1st) 221389-U, ¶ 39, see also *Class*, 2023 IL App (1st) 200963, ¶ 82 (quoting *Robinson*, 2020 IL

123849, ¶ 56). "As we are dealing with probabilities, the task of the court is essentially to make a prediction about 'what another jury would likely do, considering all the evidence, both new and old, together.' *Coleman*, 2013 IL 113307, ¶ 97." *Class*, 2023 IL App (1st) 200903, ¶ 56. "At a third-stage evidentiary hearing, the trial court would act as fact finder, determining witness credibility and the weight to be given particular testimony and evidence and resolving any evidentiary conflicts. [*People v.*] *Domagala*, 2013 IL 113688, ¶ 34." *Ealy*, 2024 IL App (1st) 221748, ¶ 34.

¶ 28     At this stage, we find that Niles's affidavit, if taken as true, does place the trial evidence in a different light that undermines our confidence in the conviction. First, we find that *Edwards*, 2012 IL 111711, on which the State relies, is distinguishable. In *Edwards*, our supreme court was left with only the affidavit of a codefendant in support of the defendant's claim of actual innocence. *Edwards*, 2012 IL 111711, ¶ 38. The codefendant averred that the defendant " 'had nothing to do with this shooting' " and that the defendant "was neither 'a part [of nor] took part in this crime.' " *Id.* ¶ 39. The codefendant "critically [did] not assert that [the defendant] was not *present* when the shooting took place." (Emphasis in original.) *Id.* ¶ 39. The court found that the affidavit "does little to *exonerate* [the] defendant who *** was convicted of the murder under the theory of accountability." (Internal quotation marks omitted and emphasis added.) *Id.* Our supreme court concluded that the affidavit did not raise the probability that "in light of the new evidence, it is more likely than not that no reasonable jurors would have convicted [the defendant.] This evidence is not 'of such conclusive character that it would probably change the

result on retrial." *Edwards*, 2012 IL 111711, ¶ 40. Based on our supreme court's finding that the evidence in support of the petition did "little to exonerate [the] defendant," it appears that the *Edwards* court applied the now-rejected "complete exoneration" standard to claims of actual innocence. See *Robinson*, 2020 IL 123849, ¶¶ 55-56 (rejecting the total vindication or exoneration standard and finding that "the conclusive-character element requires only that the petitioner present evidence that places the trial evidence in a different light and undermines the court's confidence in the judgment of guilt"). We find that *Edwards*, which obviously predates *Robinson*, is not outcome determinative in this case. See also *Simms I*, 2021 IL App (1st) 161067-B, ¶¶ 24-26.

¶ 29    Second, we make our finding in part because, unlike *Sanders*, Niles's statements in the affidavit are not positively rebutted by the record. Compare *Sanders*, 2016 IL 118123, ¶ 48 (where a codefendant testified at the defendant's trial implicating the defendant in the commission of the offense but later recanted that testimony and claimed that the defendant was not involved but part of the recantation was positively rebutted by the record). In *Sanders*, the defendant's claim of actual innocence relied upon a codefendant's prior testimony and an affidavit by a witness to the crime who testified that the codefendant acted alone. *Sanders*, 2016 IL 118123, ¶ 30. Our supreme court found that the codefendant's recantation was partially positively rebutted by the record and merely added conflicting evidence to the evidence adduced at trial. *Id.* ¶ 52. The court found that the occurrence-witness affiant's testimony merely contradicted the testimony of other occurrence witnesses *and* directly contradicted the

codefendant's recantation. *Sanders*, 2016 IL 118123, ¶ 53. Based on these findings, our supreme court found that the evidence was not so conclusive in character that it would probably change the result on retrial. *Sanders*, 2016 IL 118123, ¶¶ 47, 53. Here, Niles's statements are not positively rebutted by the record. "[R]ecognizing the existence of a conflict with the trial evidence is not the same as finding that the new evidence is positively rebutted. For new evidence to be positively rebutted, it must be clear from the trial record that no fact finder could ever accept the truth of that evidence, such as where it is affirmatively and incontestably demonstrated to be false or impossible—like the single-gunshot evidence in *Sanders*." *Robinson*, 2020 IL 123849, ¶ 60. Nor are the statements in Niles's affidavit—the sole evidence on which defendant's actual innocence claims rests—self-contradictory. Compare *Sanders*, 2016 IL 118123, ¶ 53.

¶ 30    In *McCoy*, 2023 IL App (1st) 220148, this court addressed an appeal of a second-stage dismissal of a successive petition for postconviction relief based, in part, on a claim of actual innocence. *McCoy*, 2023 IL App (1st) 220148, ¶ 1. The claim of actual innocence in *McCoy* was also "based on newly discovered evidence in the form of a codefendant's affidavit averring that the defendant was not involved in the crime that led to his convictions." *McCoy*, 2023 IL App (1st) 220148, ¶ 1. Three victims of the crime all identified the defendant as the shooter in the armed robbery and murder. *McCoy*, 2023 IL App (1st) 220148, ¶ 4. The sole issue on appeal was whether the defendant made a substantial showing that "the evidence supporting his claim is 'newly discovered, material and not merely cumulative, and of such conclusive character that it

would probably change the result on retrial' [Citations.]" *McCoy*, 2023 IL App (1st) 220148, ¶ 7 (citing *Sanders*, 2016 IL 118123, ¶ 46). The sole affidavit in support of the actual innocence claim stated that "the defendant was not involved in the robbery *** and that the shooter was [a different] man." *Id.* ¶ 8. As it pertains to this appeal, the *McCoy* court first found that "[a]lthough it is *** permissible to discredit newly discovered evidence that is positively rebutted by the trial record" (*McCoy*, 2023 IL App (1st) 220148, ¶¶ 10-11 (citing *Sanders*, 2016 IL 118123, ¶ 48)), the allegations in the affidavit were not "conclusively and positively rebutted by anything in the defendant's trial record" despite being in conflict with the identifications by three victims of the offense (*McCoy*, 2023 IL App (1st) 220148, ¶ 12 (citing *Robinson*, 2020 IL 123849, ¶ 57)). The court found that the "mere fact that the witnesses identified the defendant" does not positively rebut the codefendant's allegations "at this stage of proceedings." *McCoy*, 2023 IL App (1st) 220148, ¶ 12.

¶ 31    Applying the "correct analysis" for second-stage proceedings, this court found that the "proffered testimony, if true, is of such conclusive character that it would probably produce a different result on retrial." *McCoy*, 2023 IL App (1st) 220148, ¶ 14. The court found that

>    "[i]f a jury were to believe [the codefendant's] testimony that he was involved in
>    the robbery and if it were to believe his claim that the defendant was not involved
>    in any way, then it is hard to believe that the jury would still convict the defendant
>    based solely on the contrary identifications of the store employees. *Cf. Wilson*,
>    2022 IL App (1st) 192048, ¶ 75 (' "If taking [that] affidavit testimony as true

means anything at all, it must mean that a juror, hearing from [the new witness] at a hypothetical retrial, would believe his testimony." ' (Emphases in original and internal quotation marks omitted.) (quoting *People v. Brooks*, 2021 IL App (4th) 200573, ¶ 44)." *McCoy*, 2023 IL App (1st) 220148, ¶ 14.

¶ 32    Admittedly, the *McCoy* court found that, in that case, there was "limited evidence of guilt presented at trial" (*id.*); and in this case, the evidence against defendant includes more than the eyewitness identifications. Nonetheless, we find that Niles's affidavit similarly, "[a]t the very least, *** place[s] the trial evidence in a different light and undermine[s] confidence in the verdict." In this case, if the jury believes Niles it may also reasonably believe that defendant's confession was involuntary, or "fed" to defendant by police; that the eyewitness in the backyard actually saw King and misidentified defendant; that defendant sold the VCR to the shop owner only because Niles asked defendant to sell property without defendant then knowing why; and that defendant only learned details of the offense from hearing about it in the neighborhood, all as defendant claims. See generally *Wilson*, 2022 IL App (1st) 192048, ¶ 81 (finding "[t]here are reasons, based on this record, that a jury would reject the identification of [the defendant]"). We note that we are not deciding that the evidence establishes that Orange identified King rather than defendant based on their prison records or their arrest reports. We make *no* findings as to any conflicts in or the weight to be given any particular evidence. *Ealy*, 2024 IL App (1st) 221748, ¶ 34 ("determining witness credibility and the weight to be given particular testimony

- 20 -

and evidence and resolving any evidentiary conflicts" occurs at "a third-stage evidentiary hearing").

> "In practice, the trial court typically will review the evidence presented at the evidentiary hearing to determine first whether it was new, material, and noncumulative. If any of it was, the trial court then must consider whether that evidence places the evidence presented at trial in a different light and undercuts the court's confidence in the factual correctness of the guilty verdict. This is a comprehensive approach and involves credibility determinations that are uniquely appropriate for trial judges to make. But the trial court should not redecide the defendant's guilt in deciding whether to grant relief." *People v. Coleman*, 2013 IL 113307, ¶ 97.

We only find that, accepting Niles's affidavit as true and construing the affidavit liberally in defendant's favor, defendant has made a substantial showing of actual innocence. *Sanders*, 2016 IL 118123, ¶ 37.

¶ 33 There are undoubtedly issues with credibility and the cumulative weight of the evidence that "need to be adjudicated, but that is precisely what a third-stage evidentiary hearing is for." *Class*, 2023 IL App (1st) 200903, ¶ 82, *Wilson*, 2022 IL App (1st) 192048, ¶ 78 (lack of details in affidavit "may be proper areas of inquiry for cross-examination at an evidentiary hearing"). At this stage, however, this court had to consider all of the evidence at trial, together with the new evidence, to determine whether the new evidence places the trial evidence in a different light and

undermines confidence in the verdict. *McCoy*, 2023 IL App (1st) 220148, ¶ 14. Although the trial evidence in this case is not "flimsy," we find that Niles's testimony places the trial evidence—the confession, identifications, and physical evidence—in an entirely different light because the two cannot stand together. Assuming, as we must, that the jury believes Niles, and construing Niles to mean, as we must under the rule of liberal construction, that when Niles averred that defendant "had no involvement *whatsoever*" Niles meant that defendant was not even there, no reasonable juror could find defendant guilty.

¶ 34    Niles's affidavit, taken as true, is of such conclusive character that it is more likely than not that no reasonable juror would find defendant guilty beyond a reasonable doubt. *Sanders*, 2016 IL 118123, ¶ 47. Defendant has made a substantial showing of a claim of actual innocence. Therefore, we reverse the trial court's judgment granting the State's motion to dismiss and remand the case for a third stage evidentiary hearing.

¶ 35                                      CONCLUSION

¶ 36    For the reasons set forth above, the judgment of the circuit court of Cook County is reversed, and the case is remanded for further proceedings.

¶ 37    Reversed and remanded.