2025 IL App (1st) 240198-U

FOURTH DIVISION
Order filed: January 16, 2025

No. 1-24-0198

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of |
| Plaintiff-Appellee, | ) ) | Cook County. |
| v. | ) ) | No. 86 CR 10404 |
| MICHAEL McCOY, | ) ) ) | Honorable Michael R. Clancy, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE HOFFMAN delivered the judgment of the court.
Presiding Justice Rochford and Justice Lyle concurred in the judgment.

**ORDER**

¶ 1    *Held*: The denial of the defendant's postconviction petition following a third-stage evidentiary hearing is affirmed when the actual-innocence claim at issue depended on the credibility of a codefendant's testimony, the circuit court found that the codefendant lacked credibility, and that determination was not manifestly erroneous.

¶ 2    Following a third-stage evidentiary hearing, appellant Michael McCoy (the defendant) appeals the denial of his successive petition for postconviction relief filed under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2018)). At issue in the hearing was

the defendant's claim of actual innocence, which was premised primarily on new evidence from codefendant Wayne Millighan purportedly exonerating the defendant and identifying another man as the true perpetrator of the crime for which the defendant was convicted. The circuit court found Millighan's testimony at the hearing to lack credibility and denied the defendant's petition. We see no error in that credibility finding and affirm the denial of the petition.

¶ 3    The defendant's third-stage evidentiary hearing was held on remand from our reversal of the second-stage dismissal of the defendant's petition. The facts of the defendant's case and the postconviction petition at issue in this appeal have been adequately set forth in our opinion in that case (*People v. McCoy*, 2023 IL App (1st) 220148, ¶ 9) and in our opinion affirming the defendant's convictions and sentences (*People v. McCoy*, 238 Ill. App. 3d 240 (1992)). For the present appeal, it suffices to say that the defendant was convicted of armed robbery and first-degree murder for robbing M&R Food and Liquor (M&R) with two other men and shooting and killing store owner Nazih Youssef during the robbery. The evidence against the defendant consisted primarily of the identifications of the three surviving store employees, who collectively gave police a description of the shooter that matched the defendant. Two of the employees identified the defendant as the shooter in a photo array, and all three identified him as the shooter in a lineup and at his trial. In addition to that evidence, the State presented testimony that a swab of a substance found on the defendant's shoe tested positive for the presence of blood, although there was not enough of a sample to conduct any further testing on the substance. Testimony also established that a shoe print that the shooter left on a door in the store did not match the tread pattern of the defendant's shoes.

¶ 4     The defendant's present successive postconviction petition raised four claims for relief, only one of which remains at issue. In that claim, the defendant asserted that he was actually innocent, citing a new affidavit from Millighan averring that Millighan was one of the robbers and that the defendant was not. Instead, Millighan identified a man named Howard Reed as the true shooter. The defendant also alleged in a supplemental petition that at a hypothetical new trial a serology expert would testify that the substance on his shoe was not blood and that an expert on eyewitness identifications would explain why the identifications made by the store employees were of dubious credibility.

¶ 5     At the hearing on the defendant's petition, Millighan testified that he was diagnosed with Parkinson's Disease about three years earlier, but that the disease did not affect his memory or comprehension. Millighan admitted that he participated in the robbery of M&R along with men named "Buck," "Geno," and Howard Reed. He did not know Buck's or Geno's last name. According to Millighan, Reed was the one who entered the back of the store and shot Youssef. Millighan knew the defendant and had seen him many times prior to the robbery. He testified that the defendant was not involved in the robbery. Millighan acknowledged that he lied when he professed innocence in his trial and in subsequent postconviction proceedings, which he explained was motivated by a desire "to go home."

¶ 6     The defendant also presented testimony from Dr. Nancy Franklin, an expert on eyewitness identification and memory. She testified that the M&R employees' identifications of the defendant as the shooter "are very likely to have been produced through post-event influences and are at high risk of being inaccurate." She explained that this conclusion was based on the fact that the witnesses only observed the shooter for a short amount of time; the observation occurred in the

presence of multiple weapons during a high-stress event in which their friend had been shot; the shooter was wearing a hat; and the shooter was of a different race. Dr. Franklin also noted that one of the witnesses had initially failed to identify anyone from a photo array that contained the defendant, "which would be diagnostic of innocence." Additionally, according to Dr. Franklin, the live lineup contained an inadequate number of suspects, and only one of those suspects, the defendant, was wearing clothing that was similar to what the witnesses had described the shooter as wearing, which, Dr. Franklin testified, "produces a very high risk of what's referred to as 'clothing bias.' "

¶ 7    The defendant also presented testimony from Deanna Lankford, a forensic casework director at Bode Technologies, which performs forensic tests and analysis for the Illinois State Police. She testified that she had not performed any testing for the defendant's case, but she had reviewed reports from tests that had been conducted by others, which included the original 1986 ortho-tolidine preliminary test on the substance on the defendant's shoe, as well as the report of a 2013 phenolphthalein (PTH) test on that same substance. She explained that the type of ortho-tolidine test that was performed in 1986 is very sensitive and that the presence of certain fruits or vegetables, milk, or urine can produce a false positive result. As a consequence, a positive ortho-tolidine test would only indicate that a "particular stain is possibly indicating the presence of blood." According to Lankford, the testimony of the State's serology witness at the defendant's trial "overstated" the import of that presumptive test; the substance should not have been referred to as "blood," but rather "possibly blood." As for the 2013 PTH test, Lankford testified that it was negative for the presumptive presence of blood, meaning that "there was no blood present or there was not enough blood present to detect."

¶ 8    In addition to the testimony of those witnesses, the defendant also introduced documents concerning Howard Reed, including arrest reports and a booking photo.

¶ 9    Following the evidentiary hearing and argument from the parties, the circuit court denied the defendant's petition. The court first noted that Howard Reed's height was consistently listed in the police reports as six feet, zero inches, which did not match the witnesses' reported height of the shooter of five feet, nine inches. The court also found that Millighan's testimony at the hearing was positively rebutted by his testimony at his trial, in which he denied being involved in the robbery. The court further observed that the trial testimony of the M&R employees identifying the defendant as the shooter was "positive, consistent, clear, and credible."

¶ 10    Conversely, the court found Millighan to not be a credible witness:

> I find Wayne Milligan's testimony at the hearing and his affidavits to lack credibility. Milligan's two testimonies -- at his original trial, and now at the evidentiary hearing -- vary greatly, are completely different, contradictory, highly and inherently unreliable.
>
> Mr. Milligan's multiple and varied claims are not worth the paper they have been written on. His testimony now, and his value as a witness, given his multiple claims under oath, is worthless. The only value of Milligan's testimony is that he finally confirms, after decades and decades of denials at his trial and postconviction filings, he finally confirms that the eyewitnesses at trial accurately described and identified Milligan's role in this murder and armed robbery.

Mr. Millighan is a convicted murderer, who has now completed his IDOC sentence. The affidavits and testimony of Millighan at the evidentiary hearing are not of such a conclusive character that it will probably change the result on retrial.

¶ 11 As for Dr. Franklin's testimony, the court discounted its significance, explaining that she had not observed the witnesses testify at trial or interviewed them and was instead basing her opinion on photos, police reports, and trial transcripts. Further, the court noted that the witnesses "were questioned extensively on direct and cross-examination before the jury regarding their observations, descriptions, and identifications." Therefore, the court found that Dr. Franklin's testimony was not of such conclusive character that it would probably change the result on retrial. The court also found that, "due to the overwhelming evidence presented" at the defendant's trial, Lankford's testimony regarding the negative presence of blood on the defendant's shoe was likewise not of such conclusive character that it would probably change the result on retrial. This appeal follows.

¶ 12 On appeal, the defendant essentially argues that the circuit court committed two legal errors. First, he contends that the court improperly assessed Millighan's credibility and based its credibility finding on unsound reasons. Second, he argues that the court failed to properly consider all of the new and old evidence collectively and instead incorrectly viewed the evidence in a piecemeal manner. We agree with the defendant's second argument that the circuit court did not conduct a proper analysis of all of the evidence together, but, because we see no basis to reverse the court's finding that Millighan was not a credible witness, a correct consideration of all of the evidence in light of that credibility finding would not change the ultimate determination that the defendant failed to prove his entitlement to a new trial.

¶ 13    The Act provides a three-stage review process for a defendant's claim of a constitutional violation. The defendant's present petition was denied following an evidentiary hearing at the third stage of this procedure. At a third-stage evidentiary hearing, the defendant must show by a preponderance of the evidence that there was a substantial violation of a constitutional right during his trial proceedings. *People v. Coleman*, 2013 IL 113307, ¶ 92 (citing *People v. Stovall,* 47 Ill. 2d 42, 47 (1970)). For a claim of actual innocence, a defendant "must present new, material, noncumulative evidence that is so conclusive it would probably change the result on retrial." *Id.* ¶ 6. "At the third stage, unlike the first and second stages, the allegations are not taken as true; instead, 'the trial court acts as a factfinder, making credibility determinations and weighing the evidence.' " *People v. House*, 2023 IL App (4th) 220891, ¶ 78 (quoting *People v. Reed*, 2020 IL 124940, ¶ 51)). "A reviewing court will not reverse a trial court's findings regarding credibility determinations or fact finding after a third-stage evidentiary hearing unless the findings are manifestly erroneous." *Id.* (citing *Reed*, 2020 IL 124940, ¶ 51). Manifest error is clear, plain, and indisputable, and "a decision is manifestly erroneous when the opposite conclusion is clearly evident." *Coleman*, 2013 IL 113307, ¶ 98 (citing *People v. Morgan,* 212 Ill. 2d 148, 155 (2004), and *In re Cutright,* 233 Ill. 2d 474, 488 (2009)).

¶ 14    To begin, the defendant appears to be correct that the circuit court conducted an improper analysis of the evidence by failing to consider all of the evidence in the case collectively. Indeed, at the third stage of proceedings, the circuit court's ultimate goal is to "predict[] what another jury would likely do, *considering all the evidence, both new and old, together*." (Emphasis added.) *Id.* ¶ 97. In its ruling denying the defendant's petition, the court in this case considered each piece of new evidence, *i.e.*, the testimonies of Millighan, Dr. Franklin, and Lankford, and determined one-

by-one that none of them was of such a conclusive character that it would probably produce a different result on retrial. The court did not consider all of the evidence together, as it should have. However, because the court found that Millighan was not a credible witness, which we will discuss next, a proper consideration of all of the evidence would not change the outcome of the proceeding. See *People v. Travis*, 329 Ill. App. 3d 280, 285 (2002) ("Inspection of the record in the present case reveals that the trial court applied the incorrect standard. However, we will affirm if we find that the result would have been the same had the trial court applied the correct standard.").

¶ 15    To first address the standard of review, although the defendant contends that we owe no deference to the circuit court's determination of Millighan's credibility and should apply *de novo* review because the court did not comment on Millighan's demeanor or conduct while testifying and instead based its credibility determination on Millighan's history of false and inconsistent statements, he provides no support for drawing such a distinction and instead only cites caselaw dealing with rulings made without an evidentiary hearing or live testimony. See *In re County Collector*, 2023 IL App (1st) 210523, ¶ 17 (applying *de novo* review to a lower court's findings of fact when there was "no live testimony and no credibility determinations of witnesses" and "the matter was decided entirely on documents and written and oral argument"). That argument, therefore, is unpersuasive. Rather, it is well-established that, following a third-stage evidentiary hearing, "the finder of fact is generally the best judge of credibility and such determinations will not be overturned on appeal absent manifest error." *People v. Fair*, 2024 IL 128373, ¶ 97; see also *House*, 2023 IL App (4th) 220891, ¶ 78 ("A reviewing court will not reverse a trial court's findings regarding credibility determinations or fact finding after a third-stage evidentiary hearing unless the findings are manifestly erroneous." (citing *Reed*, 2020 IL 124940, ¶ 51)).

¶ 16    The circuit court found that Millighan was not a credible witness because his testimony at the evidentiary hearing contradicted his testimony at his own trial, making both accounts "highly and inherently unreliable," and because he was a convicted murderer who had already completed his sentence. The defendant contends that, for several reasons, these were unsound bases to find Millighan not credible. We see no merit to any of the defendant's arguments.

¶ 17    First, the defendant contends that inculpatory statements, like those that Millighan gave at the evidentiary hearing, are usually considered to be inherently reliable. While that is generally true (see *People v. James*, 118 Ill. 2d 214, 223 (1987) ("Courts and commentators have observed that admissions against penal interest may, by their very nature, possess inherent indicia of reliability.")), that logic does not apply when the witness has already been convicted and sentenced for the crime in which he is admitting involvement. See *People v. Gabriel*, 398 Ill. App. 3d 332, 343 (2010) (affirming a lower court's finding that a witness who admitted his involvement in a crime was not credible when, among other things, the witness "did not face the potential for further criminal prosecution based on his statements" because "he had already been convicted and was serving his sentence for his role in the shooting"). Admissions against penal interest are considered reliable because people normally do not freely open themselves to criminal liability, and their willingness to do so suggests that they are likely telling the truth. But, in the present case, Millighan has already been convicted and served his sentence for his role in the robbery and murder at issue, so admitting that involvement now carries no risk, and his admission, therefore, does not carry the usual suggestion of reliability.

¶ 18    Second, the defendant asserts that it does not make sense to discredit Millighan's testimony because he is a convicted murderer. Rather, he argues that Millighan's involvement in the robbery

and murder actually makes his testimony *more* reliable because his "unique insight into the crime gives him a greater ability than anyone else to accurately identify the other offenders." However, while that may be true, it has been well-established that a criminal conviction can be introduced as impeachment evidence and that a felony conviction can make a witness less credible. See *People v. Mullins*, 242 Ill. 2d 1, 14 (2011) (explaining that "evidence of a witness' prior conviction is admissible to attack the witness' credibility"); *People v. Guerrero*, 2021 IL App (2d) 190364, ¶ 92 (observing that a witness' status as a convicted felon "cast[ed] further doubt on his credibility as a witness"). As a result, it was not manifestly erroneous for the court to view Millighan as less credible because he is a convicted felon.

¶ 19    Third, the defendant argues that the court failed to consider the other evidence corroborating Millighan's testimony at the evidentiary hearing, and he contends that this corroboration demonstrates that Millighan's testimony was credible. Specifically, the defendant points to evidence that the shoe print on the office door did not match the tread pattern of his shoes, that there was no physical evidence connecting him to the crime, that Howard Reed looked like him and had been involved in other robberies in the area, that there was no blood on his shoes, and that, according to Dr. Franklin, the identifications made by the store employees were unreliable. However, none of this evidence is so clearly supportive of Millighan's present account of the defendant's lack of involvement in the crime as to render the circuit court's credibility finding manifestly erroneous. In other words, this additional evidence would all be consistent with Millighan's account, but none of it conclusively demonstrates that Millighan was testifying truthfully and that the court's credibility finding was indisputably wrong.

¶ 20    For the same reason, when we factor in the court's credibility finding and consider all of the old and new evidence together, as the circuit court should have done, we reach the same ultimate conclusion as the lower court that the defendant has not met his burden of demonstrating that his new evidence would probably change the result on retrial. If Millighan were credible and believable, then, as we found in the defendant's prior appeal, it is likely that the result of a new trial would be different. However, the circuit found his testimony to lack credibility, and without that evidence we do not believe that the testimony of Dr. Franklin regarding the alleged unreliability of the witness identifications and Lankford's testimony definitively excluding the presence of blood on the defendant's shoe is enough to probably change the result. That evidence would certainly help the defendant's case to some degree and cast doubt on the State's evidence, but in the absence of conclusive evidence pointing to another perpetrator or excluding the defendant, the type of evidence that Millighan would have provided if he were credible, the addition of Dr. Franklin's and Lankford's testimony would not be enough to probably change the result. In other words, their testimony would be probative of the defendant's innocence, but not conclusive, which is what is required to warrant postconviction relief.

¶ 21    Ultimately, the defendant's actual innocence claim was reliant on the credibility of Millighan, and the determination of his credibility was a matter for the circuit court to decide. The court found him not credible, and the defendant has not demonstrated that the court's credibility determination was manifestly erroneous. Without that key evidence, the defendant cannot show that there would probably be a different result on retrial. Accordingly, we affirm the circuit court's denial of the defendant's petition.

¶ 22    Affirmed.