2025 IL App (4th) 241451-U

NO. 4-24-1451

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

FILED
October 15, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Peoria County |
| MESSIAH CARPENTER, | ) | No. 23CF509 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Katherine S. Gorman, |
| | ) | Paul P. Gilfillan, |
| | | Judges Presiding. |

JUSTICE CAVANAGH delivered the judgment of the court.
Justices Zenoff and Doherty concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The appellate court affirmed, finding (1) the trial court did not err when denying defendant's motion to suppress evidence, (2) the court did not err when imposing defendant's sentence, (3) the aggravated unlawful use of a weapon statute was not facially unconstitutional, and (4) defendant's as-applied challenge was premature.

¶ 2      In August 2024, following a stipulated bench trial, the trial court convicted defendant, Messiah Carpenter, of aggravated unlawful use of a weapon (AUUW) (720 ILCS 5/24-1.6(a)(1) (West 2022)). On appeal, defendant argues (1) the court erred when denying his motion to suppress, (2) the court erred when imposing sentence, and (3) the AUUW statute violates the second amendment (U.S. Const., amend. II) both on its face and as applied to him pursuant to the United States Supreme Court's decision in *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022). We disagree and affirm.

¶ 3                                  I. BACKGROUND

¶ 4        In July 2023, defendant was charged by indictment with AUUW for knowingly possessing a handgun on his person in public while not possessing the requisite firearm owners identification card or concealed carry permit.

¶ 5        In May 2024, defendant filed a motion to suppress evidence arguing the police lacked probable cause to search, detain, arrest, and subsequently seize the handgun found on his person. A hearing on his motion occurred on August 7, 2024.

¶ 6        At the hearing, police officer Joseph Smiles testified he was working on the evening of July 3, 2023, when he observed defendant walking near the intersection of Arcadia Street and Delaware Street in Peoria, Illinois. Smiles stated he had known defendant for "[q]uite a while," clarifying, "at least a year, maybe two." Smiles recalled observing defendant in the passenger seat of a stolen vehicle through the Flock system (an automated video surveillance technology). Smiles was alerted to an image matching the criteria of a stolen vehicle by the Flock system approximately half an hour prior to encountering defendant. Smiles described the Flock system image as showing defendant in the passenger seat and a "black male with black glasses[ and a] black hoodie" in the driver's seat. He could not identify the driver. When asked how he was able to identify defendant in the image, Smiles stated "[he] looked at his face on the photo when [he] received it." Counsel for defendant drew Smiles's attention to a printed version of the image and stated, "You can't see [defendant's] face." Smiles conceded the printed image was the same photograph but noted the electronic version was a better-quality photograph and reiterated his belief the image showed defendant.

¶ 7        Smiles denied sending the image to another police agency for facial recognition. He stated the police report, which indicated the image would be sent for further facial recognition, was written by a different officer. He also identified a photograph of a "hoodie"

- 2 -

defendant was wearing at the time of his arrest. Smiles believed defendant was wearing the same hoodie in the Flock system image. He noted the hoodie had an emblem on the "chest area on the left side" and half of the emblem was "cut off by the A-pillar of the vehicle." Smiles stated a portion of the emblem from the hoodie was observable on the Flock system image. On cross-examination, Smiles was shown an electronic version of the Flock system image, and he stated it was much clearer.

¶ 8        Police officer Andrew Redpath testified he was also working on July 3, 2023, and had known defendant approximately two years. He stated he first saw defendant on July 3, when he recognized him on the Flock system image. When he observed defendant again half an hour later walking down the street, he initiated contact with him. He asked defendant to speak with him and then asked him if he had anything "illegal on him." Redpath said defendant denied having anything illegal on his person. Redpath then said he arrested defendant. When asked what he knew at the time he placed defendant in custody, Redpath said he knew defendant "was in a stolen vehicle which was photographed by the Flock system." Redpath stated the digital Flock system image was "better quality" than the printed image used at the hearing. He said he was not familiar with the driver, but he recognized the passenger. He also recognized the hoodie defendant was wearing at the time of his arrest as consistent with the hoodie of the passenger in the Flock system image.

¶ 9        The trial court noted the digital version of the Flock system image was discernably clearer. The court stated both officers were "acquainted with" defendant and both had identified him. The court said, "[I]f they're already acquainted with [defendant], they're going to know him. I can see [defendant's] face, and the State's arguments are well taken." The court denied defendant's motion.

¶ 10 On August 19, 2024, defendant waived his right to a jury trial, and the matter proceeded to a stipulated bench trial. The State proffered that on July 3, 2023, Peoria police officers were investigating an unrelated incident and wanted to speak with defendant about that incident. Officers observed defendant on a public roadway and initiated contact with him. He was handcuffed and, prior to being transported, was patted down for safety purposes. Officers discovered a Glock handgun in defendant's waistband. The gun was "uncased, loaded and accessible to [defendant]." At the time of defendant's arrest, he had not been issued a valid firearm owners identification card or concealed carry license.

¶ 11 Counsel for defendant stipulated the facts proffered by the State were accurate and stated, "We're doing this for the record preserving our right to appeal the suppression hearing which was held a couple of weeks ago and the Court found in that hearing that my client was properly detained and searched when he was taken into custody." Both parties waived argument. The trial court found the State had proven defendant guilty of AUUW beyond a reasonable doubt.

¶ 12 In September 2024, defendant filed a motion for a new trial or, alternatively, for a judgment notwithstanding the verdict. The motion argued the trial court erred when finding the Flock system image was sufficient to permit officers to identify defendant for the purposes of probable cause to detain him on July 3, 2023. The court stated it would not overturn the ruling of the judge who presided over the motion to suppress hearing and denied defendant's motion. The matter immediately proceeded to sentencing.

¶ 13 A presentence investigation report (PSI) was admitted into evidence, along with two supplements. The PSI showed defendant, who was 20 years old at the time of sentencing, had no prior criminal or juvenile record and was unemployed due to his current incarceration in

the Peoria County jail. The PSI also showed defendant was indicted in May 2024 for first degree murder. According to the report, defendant had graduated high school one year early, with a cumulative grade point average of 1.66. Defendant recalled being suspended from school for " 'petty things.' " School disciplinary records revealed defendant had been suspended or received detention "numerous times." The PSI stated defendant's disciplinary record dated back to 2010, when he was six years' old. Defendant had been disciplined "over 70 times for physically fighting/choking/attacking other students, making threats to hurt or kill students and/or teachers, vandalizing property of others, stealing property of others, and even running from Peoria Police after being detained at school."

¶ 14        Defendant gave a statement in allocution wherein he admitted to possessing a firearm at the time of his arrest. However, he contended officers "were out to get" him and that he was not in the photograph taken by the Flock system. He contended officers lied in order to arrest him. He stated it was a nonviolent crime, and he possessed the gun for personal protection.

¶ 15        The trial court began by noting it had considered the PSI, the evidence, arguments of the parties, defendant's statement in allocution, the statutory factors in aggravation and mitigation, and defendant's history and character. The court stated the "most significant finding" was defendant's lack of a criminal history. The court found defendant's gun possession did not threaten serious harm to another person but stated, "[W]e all know that it's just one short step away from having a gun right at your disposal to using it." The court found a sentence was necessary to deter others from committing gun crimes, stating, "The message continues to, needs to be sent to people. Guns are a scourge on our society." Although defendant lacked a criminal history, the court stated defendant's school disciplinary records were "amongst the longest" it had received—75 pages, with each page containing "a summary of multiple transgressions." The

court said defendant was not being sentenced based on the school disciplinary records, but they were a factor as to whether he would likely comply with probation. The court noted that because of defendant's other pending matter, he "might not be out of jail in any event if probation was ever awarded." However, the court found probation would be inconsistent with the ends of justice and stated, "[A]ny gun crime sentence to prison would be justified by the very nature of the dangerousness of guns notwithstanding the cost to incarcerate." The court sentenced defendant to one year and nine months in prison.

¶ 16    In November 2024, defendant filed a motion to reconsider his sentence, arguing (1) the trial court failed to consider numerous mitigating factors, (2) officers lacked probable cause for his initial arrest, (3) there was a statutory presumption for the imposition of a term of probation, and (4) the court was unfairly made aware of his other pending charges.

¶ 17    When considering defendant's motion, the trial court stated, even though they were included in the PSI, defendant's pending charges and school disciplinary record were not factors in its sentencing determination. The court stated defendant received a "medium range" sentence, which was "deserved under [the] circumstances of this case." The court denied defendant's motion.

¶ 18    This appeal followed.

¶ 19                                    II. ANALYSIS

¶ 20    On appeal, defendant argues (1) the trial court erred by denying his motion to suppress, (2) the court erred when imposing his sentence, and (3) the AUUW statute violates the second amendment both on its face and as applied pursuant to the United States Supreme Court's decision in *Bruen*. We address each argument in turn.

¶ 21                            A. Motion to Suppress Claim

¶ 22        Defendant first argues the trial court erred when denying his motion to suppress. He contends, pursuant to *Neil v. Biggers*, 409 U.S. 188 (1972), the Flock system image provided an insufficient opportunity for the officers to view the subject, therefore making the officers' identification of defendant unreliable.

¶ 23        The State initially contends defendant forfeited portions of his argument by failing to raise them before the trial court. Specifically, the State contends defendant has forfeited his statistical and scientific research claims. Therefore, we must first determine whether defendant has forfeited any of his arguments.

¶ 24        "It is well settled in Illinois that an appellant who fails to raise an issue before the trial court forfeits the issue and may not raise it for the first time on appeal." *Williams v. Bruscato*, 2019 IL App (2d) 170779, ¶ 24. To avoid forfeiture, a party must preserve an *issue* on appeal, but they are not required to preserve an *argument* on appeal. See *Brunton v. Kruger*, 2015 IL 117663, ¶ 76 ("We require parties to preserve issues or claims for appeal; we do not require them to limit their arguments [on appeal] to the same arguments that were made below."). It is clear from the record defendant has consistently intended on preserving the issue of the trial court's denial of his motion to suppress based on whether the Flock system image provided the officers with a sufficient opportunity to identify him. Therefore, we find defendant has not forfeited this issue and his related arguments on appeal.

¶ 25                        1. *Standard of Review and Applicable Law*

¶ 26        "In determining whether a trial court has properly ruled on a motion to suppress, findings of fact and credibility determinations made by the trial court are accorded great deference and will be reversed only if they are against the manifest weight of the evidence." *People v. Slater*, 228 Ill. 2d 137, 149 (2008). We review *de novo* the trial court's decision

whether to deny a motion to suppress. *People v. Drain*, 2023 IL App (4th) 210355, ¶ 24.

¶ 27        When assessing the reliability of identification testimony, reviewing courts have relied upon the factors set forth in *Biggers*, which include:

> "(1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness' degree of attention, (3) the accuracy of the witness' prior description of the criminal, (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and the confrontation." *People v. Piatkowski*, 225 Ill. 2d 551, 567 (2007) (citing *Biggers*, 409 U.S. at 199-200).

No single factor is dispositive, and the reliability of the identification is based on the totality of the circumstances. *Biggers*, 409 U.S. at 199.

¶ 28                    2. *Opportunity to View*

¶ 29        Regarding the first factor, defendant argues the image cast the passenger of the vehicle in a shadow while partially obstructing his facial features. He cites *In re O.F.*, 2020 IL App (1st) 190662, in support.

¶ 30        In *O.F.*, the appellate court noted the officer had the opportunity to view a juvenile during the daytime, but it was raining and "not a bright, clear day." *Id.* ¶ 37. Additionally, the court noted the officer's vantage point made it such that it was "devoid of physical attributes such as the individual's clothing, height, and weight upon which the viewer can seize to aid an identification." *Id.* ¶ 38. Lastly, the court noted the officer identified "no distinguishing characteristics." *Id.*

¶ 31        We find *O.F.* distinguishable from the instant case. First, the image at issue here was taken on a bright, clear day where both the driver and passenger of the vehicle were readily

observable. Both officers testified to observing the hooded sweatshirt the passenger was wearing as consistent with what defendant was wearing at the time of his arrest half an hour later. Lastly, both officers testified to their familiarity with defendant. Accordingly, we find the opportunity to view the subject in the image does not weigh in favor of defendant.

¶ 32                                3. *Degree of Attention*

¶ 33        Defendant argues there was no testimony concerning the amount of attention or time officers devoted to viewing the Flock image. He concedes that because it was an image, it would have provided the officers with an opportunity to pay closer attention than an instance of a fleeting in-person encounter. However, he maintains the lack of testimony on this issue weighs in his favor because the State bears the burden of establishing eyewitness reliability.

¶ 34        We are reviewing the trial court's determination for error *de novo* and any factual determinations made by the court under the manifest weight of the evidence standard. Defendant carries the burden of persuasion as to his claims of error on appeal. *Insurance Benefit Group, Inc. v. Guarantee Trust Life Insurance Co.*, 2017 IL App (1st) 162808, ¶ 44. He cannot show error by merely relying on a dearth of evidence he himself failed to elicit or explore at the motion hearing. While there was no specific testimony as to the officers' degree of attention to the Flock image, there is nothing in this record to suggest either officer was inattentive to its content. Accordingly, we find this factor does not weigh in defendant's favor.

¶ 35                                4. *Accuracy of Prior Description*

¶ 36        Defendant next notes both officers testified he was wearing a similar hooded sweatshirt in the image as when he was subsequently arrested. A photograph of the hooded sweatshirt shows a white circular emblem on the left chest, which officers noted was partially visible in the Flock image. Defendant argues neither officer noted anything "particular" about the

hooded sweatshirt, but the photograph exhibit of the sweatshirt shows it is " 'bedazzled' " with rhinestones along the exterior of the hood. Defendant notes the passenger in the Flock image has the hood pulled up over his head, making the hood visible, but no rhinestones are observable. After noting these distinctions, defendant contends the officers' generic description of his hoodie is representative of clothing bias. He cites *People v. McCoy*, 2025 IL App (1st) 240198-U, ¶ 6, where a defendant in a successive postconviction proceeding presented the testimony of an expert on eyewitness identification to contend a lineup was inadequately performed.

¶ 37        Regarding defendant's contentions of clothing bias, we are unpersuaded. The defendant in *McCoy* presented the testimony of an expert witness to advance a theory of clothing bias regarding the performance of an identification lineup. *Id.* The circumstances in this case are substantially different, and no expert testimony was offered at the motion hearing. Defendant cannot simply ride the coattails of expert testimony presented for the specific facts of one case and apply said testimony to the specific facts of this unrelated case.

¶ 38        Defendant, however, is correct that neither officer testified to having observed the rhinestones on the hood of the sweatshirt of the passenger in the Flock image. Our review of the photograph of the sweatshirt clearly shows numerous rhinestones emblazoned on the outside of the hood. However, when we review the Flock image, it shows a majority of the passenger's face absent the right cheek area and only the top portion of the external part of the hood is visible. It is not clear from our review that any rhinestones can be observed on the visible outer portions of the passenger's hood. However, the white emblem on the left chest of the passenger's sweatshirt does correspond sufficiently with the sweatshirt photograph as testified to by both officers. Accordingly, we find this factor weighs in neither party's favor.

¶ 39                          5. *Degree of Certainty*

¶ 40        Defendant argues this factor is neutral because social science research has discredited the notion of confidence regarding eyewitness identification. He cites various cases standing for this or a related proposition.

¶ 41        Regardless of whether defendant is correct about the body of scientific research on this issue, it does not change the testimony of the officers at the motion hearing that both were familiar with defendant from prior contacts. When the officers viewed the Flock image, they both recognized defendant as the passenger. There is no evidence before us contradicting their testimonies. Accordingly, we find this factor does not weigh in defendant's favor.

¶ 42        *6. Elapsed Time*

¶ 43        Lastly, defendant argues the time elapsed between officers viewing the Flock image and subsequently making an in-person visual identification of him is a neutral factor. He concedes the 30-minute interval is a short period of time but argues the officers rested their identification on their familiarity with him. He contends the officers' familiarity with him should not be viewed as a proxy for reliability given the basis for their recognition, the Flock image itself, is so unclear.

¶ 44        The evidence from the hearing showed the officers were alerted to the Flock image approximately half an hour prior to making visual contact with defendant. Both officers recalled recognizing defendant from the image. When they observed him walking down the street, they initiated contact regarding an allegedly stolen vehicle. There is nothing from the hearing evidence to suggest the elapsed time between officers viewing the Flock image and defendant's subsequent arrest that would make the identification of defendant unreliable. Accordingly, this factor does not weigh in defendant's favor.

¶ 45        Having reviewed both the printed image that was utilized by defendant at the

motion hearing and the digital version, it is undoubtedly clear the digital version of the Flock image is higher quality. For all the deficiencies the Flock image may have, there are two individuals that can be observed in the image: (1) a Black male driver who is wearing sunglasses, a black hooded sweatshirt, and what appears to be a white undershirt and (2) a Black male passenger who is wearing a black hooded sweatshirt with a portion of a white emblem on the left chest. The driver's face is obscured somewhat by his sunglasses, while the right quarter of the passenger's face is obscured by the A pillar of the vehicle itself. Given the relative clarity of the faces of the vehicle's occupants, we find it reasonable that a person who was familiar with its occupants would be able to recognize said individuals. Therefore, given the totality of the circumstances, we find the trial court did not err when denying defendant's motion to suppress.

¶ 46                                B. Sentencing Error Claims

¶ 47        Defendant next argues the trial court erred by relying on improper factors when imposing sentence. Specifically, he argues the court (1) relied on unproven pending charges without any evidentiary support and (2) applied a *de facto* policy of imprisonment for gun offenses rather than exercising individual discretion. We address each claim in turn.

¶ 48        First, defendant claims the trial court improperly considered his pending criminal charges when fashioning the sentence. He bases his claim on the State's multiple references to those charges, coupled with the court's refusal to consider probation and departing from the presumption.

¶ 49        "There is a strong presumption that the trial court based its sentencing determination on proper legal reasoning, and a court of review should consider the record as a whole, rather than focusing on a few words or statements by the trial court." *People v. Canizalez-Cardena*, 2012 IL App (4th) 110720, ¶ 22. The defendant bears the burden to

affirmatively establish the sentence imposed was based on an improper factor. *People v. Sturgeon*, 2019 IL App (4th) 170035, ¶ 103. A sentence will not be reversed unless it is evident the trial court relied upon an improper factor. *Id.* "Whether the trial court relied upon an improper factor at sentencing is a question of law reviewed *de novo*." *Id.*

¶ 50          As defendant notes in his brief, he raised this issue in his motion to reconsider sentence. The trial court never referenced defendant's pending charges as a basis for its sentencing consideration and, in fact, stated at the hearing on the motion to reconsider that it had not based its sentencing decision on defendant's pending criminal charges. The fact that defendant did not have a criminal history was a significant mitigating factor. However, the mere presence of mitigating factors does not require a minimum sentence. *People v. Jones*, 2014 IL App (1st) 120927, ¶ 55. The fact defendant did not receive probation or even the minimum sentence of imprisonment does not mean the court improperly considered his pending criminal charges. The court clearly articulated the factors it had considered, none of which included what defendant complains of here. Accordingly, we find defendant has not affirmatively shown his sentence was based on an improper consideration of his pending criminal charges.

¶ 51          Next, defendant argues the trial court abused its discretion when it applied a categorical sentencing policy for gun offenses rather than exercising individual discretion. He again notes the statutory presumption of probation. See 730 ILCS 5/5-6-1(a) (West 2024). He contends the court's comments, "The message continues to, needs to be sent to people. Guns are a scourge on our society," and later, "[A]ny gun crime sentence to prison would be justified by the very nature of the dangerousness of guns notwithstanding the cost to incarcerate" show the court imposed an improper categorical policy of automatic imprisonment for gun offenses.

¶ 52          "The legislature sets forth by statute the range of permissible sentences for each

- 13 -

class of criminal offense." *People v. Fern*, 189 Ill. 2d 48, 53 (1999). A reviewing court affords great deference to a trial court's sentencing judgment because, "having observed the defendant and the proceedings, [it] is in a far better position to consider such factors as the defendant's credibility, demeanor, general moral character, mentality, social environment, and habits than a reviewing court, which must rely on a 'cold' record." *People v. Little*, 2011 IL App (4th) 090787, ¶ 24. A sentence that falls within the applicable statutory limits is reviewed for an abuse of discretion. *People v. Price*, 2011 IL App (4th) 100311, ¶ 36. "A sentence within statutory limits will not be deemed excessive and an abuse of the court's discretion unless it is 'greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense.' " *People v. Pina*, 2019 IL App (4th) 170614, ¶ 20 (quoting *Fern*, 189 Ill. 2d at 54).

¶ 53        Here, defendant was found guilty of AUUW, a Class 4 felony. 720 ILCS 5/24-1.6(d) (West 2022). A Class 4 felony carries a potential term of imprisonment of not less than one year and not more than three years. 730 ILCS 5/5-4.5-45(a) (West 2024); see 720 ILCS 5/24-1.6(d)(2) (West 2022). Because defendant's sentence was within the permissible range, we begin with the presumption the sentence was proper. *People v. Knox*, 2014 IL App (1st) 120349, ¶ 46.

¶ 54        The abuse of discretion standard is deferential to sentencing courts. *People v. Fisher*, 407 Ill. App. 3d 585, 589 (2011). In this case, the trial court noted, as mitigating factors, defendant's lack of criminal history and that his unlawful possession of a firearm did not threaten serious harm. As we stated earlier, the mere presence of mitigating factors does not require a minimum sentence. Additionally, a sentencing court is not required to afford greater weight to mitigating factors than to the severity of the offense. *People v. Alexander*, 239 Ill. 2d 205, 214 (2010); see *People v. Quintana*, 332 Ill. App. 3d 96, 109 (2002) (noting the seriousness of the

offense is the most important sentencing factor). The court considered defendant's voluminous school disciplinary record when determining he was unlikely to comply with conditions of probation. The court found imprisonment was necessary to deter others and probation would be inconsistent with the ends of justice. Ultimately, the court was in a better position to observe defendant's conduct and to weigh the need for a sentence beyond the minimum statutory requirement. "[A]n abuse of discretion occurs where the trial court's decision is arbitrary, fanciful, or unreasonable to the degree that no reasonable person would agree with it." *People v. McDonald*, 2016 IL 118882, ¶ 32. Nothing from this record suggests the court's sentencing determination was arbitrary, fanciful, or unreasonable. Accordingly, we find no reason to conclude the court's sentence was disproportionate to the nature of the offense.

¶ 55                                  C. Constitutional Claims

¶ 56          Lastly, defendant argues the AUUW statute is unconstitutional both on its face and as applied to him under the second amendment. He claims there is no analogous history and tradition to justify Illinois's requirement a person acquire a firearm owners identification card pursuant to section 2(a)(1) of the Firearm Owners Identification Card Act (FOID Card Act) (430 ILCS 65/2(a)(1) (West 2022) and/or a concealed carry license pursuant to section 10 of the Firearm Concealed Carry Act (Concealed Carry Act) (430 ILCS 66/10 (West 2022)) to exercise his constitutional right to bear arms.

¶ 57                        1. *Second Amendment Facial Constitutional Challenge*

¶ 58          We begin by noting the issue of the constitutionality of the AUUW statute and its relationship to the FOID Card Act and Concealed Carry Act was recently addressed by our supreme court in *People v. Thompson*, 2025 IL 129965. Our supreme court stated clearly, "For the reasons expressed in *Bruen* itself, Illinois's shall-issue regime is not facially unconstitutional

under the second amendment." *Id.* ¶ 53. Aside from arguing *Thompson* was wrongly decided for failing to conduct a historical inquiry, defendant offers no reason for this court to reject the holding in *Thompson*. Because this issue has been squarely decided by *Thompson*, we decline defendant's invitation to reject *Thompson* and find no basis to conclude the AUUW statute is facially unconstitutional, as argued by defendant.

¶ 59                    2. *Second Amendment As-Applied Challenge*

¶ 60        In response to defendant's as-applied challenge, the State argues it is premature because he failed to establish he attempted to legally possess a firearm and was thwarted by the statute he is challenging. Defendant contends his as-applied challenge is appropriate for review for the first time on direct appeal where the record is sufficiently developed.

¶ 61        We stated in *People v. Ivy*, 2023 IL App (4th) 220646-U, ¶ 14:

> " 'The distinction between facial and as-applied constitutional challenges is critical.' *People v. Harris*, 2018 IL 121932, ¶ 38. An as-applied constitutional challenge requires a defendant show a 'statute is unconstitutional as it applies to the specific facts and circumstances' of that defendant. *Id.* Because an as-applied constitutional challenge depends on the specific facts and circumstances of that defendant, it is vital the record be sufficiently developed on the defendant's specific facts and circumstances for appellate review. *Id.* ¶ 39. 'A court is not capable of making an "as applied" determination of unconstitutionality when there has been no evidentiary hearing and no findings of fact. [Citation.] Without an evidentiary record, any finding that a statute is unconstitutional "as applied" is premature.' (Internal quotation marks omitted.) *Id.*"

¶ 62        We agree with the State. There is no basis in this record to conclude defendant's

as-applied challenge is ripe for review. See *People v. House*, 2021 IL 125124, ¶ 31 (holding the appellate court erred when addressing an as-applied constitutional challenge pursuant to the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11) without a developed evidentiary record or factual findings). Accordingly, we find defendant's as-applied challenge is premature.

¶ 63                                   III. CONCLUSION

¶ 64          For the reasons stated, we affirm the trial court's judgment.

¶ 65          Affirmed.